[No. 14845.   Department One.   January 10, 1919.]

WASHINGTON UNION COAL COMPANY, *Appellant,* v.
THURSTON COUNTY *et al., Respondents.*[1]

TAXATION (59)—VALUATION—MINING PROPERTY.   An assessment
of coal lands at from $5 to $15 per acre for coal values is not void as
arbitrary and without the exercise of discretion, where the deputy
making the assessment made an investigation on the land and based
his judgment thereon and on information gained from coal owners,
miners and prospectors.

SAME (59).   Coal mining property surrounding a proven mine
may be given an assessed valuation as such where there is reason
to find and believe that it has coal values.

SAME (96, 210)—PRESUMPTION—REASONABLENESS—EVIDENCE—SUF-
FICIENCY.   The presumption in favor of the reasonableness of the
assessed valuation of coal mining property must be overcome by
clear and satisfactory evidence, and this is not done where it appears
that further prospecting work and investigation was necessary
before the company's engineer could give his opinion as to whether
it contained coal that could be mined at a profit.

Appeal from a judgment of the superior court for
Thurston county, Wright, J., entered October 1, 1917,
in favor of the defendants, dismissing an action to re-
cover taxes paid and for an injunction, tried to the
court.   Affirmed.

*A. C. Spencer, Frank C. Owings,* and *John F. Reilly,*
for appellant.

*Thos. L. O'Leary,* for respondents.

MITCHELL, J.—In the fall of 1907 and the spring of
1908, appellant, a coal mining company, purchased
5,044.49 acres of land and the right to explore, mine
and take coal from beneath the surface of 255.5 other
acres of land, all situate in Thurston county and lying
within a territory about seven miles east and west and

[1]Reported in 177 Pac. 774.

three miles north and south. The property consists of about ten detached tracts, the greater portion of the land lying in one parcel situated in the south central part of the territory mentioned. Near the center of the largest tract, appellant, since about 1908, has been, and is now, actively engaged in the operation of a coal mine, known as the Tono Coal Mine, for commercial purposes.

Early in the year 1908, the county assessor, pursuant to advice from the state tax commission, instructed his field deputy assessor that, where lands had been taken as coal lands and he was satisfied there was coal, to make assessments therefor. It appears that no such assessments had been made on the property involved for the year 1907. The deputy assessor for that year, confessedly without any knowledge or experience as to values of coal mines and prospects, though well acquainted with many property owners and others who for years had prospected for and mined coal in this field, went into the field and gathered information from twenty to thirty present and former owners, prospectors and coal miners of years of experience on some of the lands now owned by appellant, as well as other lands immediately adjacent and within the territory. Thereupon the deputy assessor assessed the lands of appellant (whether it had yet taken title or not) and much, or nearly all, of the other lands in this field at $10 per acre for coal values, and taxes were levied thereon for that year. Thereafter, from year to year until 1915, some of the parties, other than the appellant, owning property interspersed with appellant's lands, procured whole or partial relief from coal assessments, from the county board of equalization. Appellant paid its taxes without protest until 1915, when, after the as-

sessment had been made for that year, it claims to have learned for the first time that its assessments had for years included coal values. In the meantime, the proof does not show when, the assessments for coal values in this field had been changed from the uniform sum of $10 to different amounts per acre. The county assessor for the year 1915 continued the assessments of appellant's property as they were last assessed. In doing so, he testified that he considered former tax payments without protest; he knew of the Tono Mine and its operation; he had been on plaintiff's lands and was acquainted with the soil in places; knew that some of it had coal outcroppings; that coal had been taken out of other mines on this or adjacent lands; he knew the people in that community burned coal right along, taken from the lands in the vicinity; and that, among other things, for the purpose of fixing coal values, he checked up with the Pierce county assessor as to values placed on coal lands in that county. The assessments now objected to for the year 1915 range from $5 to $15 per acre for coal values, except 288.55 acres which are free from any such assessment.

Appellant applied to the board of equalization in 1915 for a reduction of its assessments to the extent of all coal values, except as to 871.92 acres immediately surrounding the mine. The board refused to change the assessments. After the levy and prior to delinquency, appellant tendered to the county treasurer in full payment of its taxes for the year 1915 an amount which equaled its taxes, eliminating all coal values on its lands other than the 871.92 acres referred to. It is to be noticed that, by the tender, appellant took the position that it was not chargeable with any tax on its sub-surface mineral rights in 255.5

acres, which was its contention before the board of equalization. The county treasurer refused the money. Appellant then paid under protest the taxes on the sub-surface mineral rights in the 255.5 acres, and afterwards brought this action to recover back that amount and to enjoin the collection of all other taxes based on coal values other than in the 871.92 acres. Upon trial, the action was dismissed by the superior court.

Appellant's first argument is as follows:

"The addition in 1908 to the assessed value of appellant's property, of $10 per acre for supposed coal values (from which the 1915 assessment was copied) was arbitrary, fraudulent, illegal and void."

It is said by counsel that no court has ever countenanced assessments of this sort. The strength of their argument in this respect is shown by that portion of their brief as follows:

"This court itself has consistently held, beginning with the case of *Whatcom County v. Fairhaven Land Co.*, 7 Wash. 101, 34 Pac. 563, a case in which there was evidence of a blanket assessment being placed without investigation on the property owner's land, 'An arbitrary assessment of property, without the exercise of the assessor's judgment, based on knowledge or information, is an illegal assessment, and is a fraud upon the property owner, and may be taken advantage of by the latter in some manner.' "

Such argument and authority are not in point here because the deputy who made the assessment in 1908 did make an *investigation* on the land and exercise his judgment based thereon and on *information* gained from present and past owners, miners and prospectors. A number of those persons testified at the trial of this case to facts identical with those of which the deputy assessor had been informed. As to the suggestion of arbitrariness by reason of the uniformity of $10 per

acre, it is not found in the assessment of 1915, now complained of, for the assessments range from $5 to $15 per acre for coal values and were placed on the property by the assessor upon exercising his judgment, based not only on the records for years showing these to be coal lands, but also upon knowledge and investigation in the year 1915 of an active coal mine, of the soil and coal outcroppings, former mining on these and adjacent lands, residents using coal taken from these or contiguous lands, and inquiry of the assessor's office and examinations of the records in an adjoining county as to coal land values. As shown by the protest to the board of equalization and the tender to the county treasurer, appellant contends that all assessments for coal values, other than in lands just around its mine, are baseless and void, upon the theory, as we understand, that the county has not demonstrated that the lands contained workable commercial bodies of coal and that the assessors are not scientists and experts.

Appellant, a coal mining company, after prospecting, including some drilling, purchased all of these lands about the same time. Manifestly it was persuaded by supposed hidden values. It must have been satisfied of sufficient and tempting prospects. It has since developed and proved a mine, and is now engaged in operating it for commercial purposes, since which time it has done a very little drilling to further determine the value of its holdings. Bought as, and partially proven by appellant to be, coal lands, we are not advised if there has been any depreciation in the coal values of these lands. Mining property such as this, surrounding a proven mine, although in the prospective stage, may be given an assessed valuation as such, not as a mine, but as a prospect, where there is

reason for the assessing officers to find and believe that the property has coal values. *First Thought Gold Mines v. Stevens County,* 91 Wash. 437, 157 Pac. 1080. For such purpose the county assessor and the board of equalization are not required to be mining experts, nor employ experts to properly and legally assess it.

As to the reasonableness of valuations placed on property for the purpose of taxation, the well established rule favors and supports the county assessor and board of equalization, and one who challenges such valuations assumes a task not measured or accomplished with less than clear and convincing proof. *Templeton v. Pierce County,* 25 Wash. 377, 65 Pac. 553; *Northern Pac. R. Co. v. Pierce County,* 55 Wash. 108, 104 Pac. 178; *Heuston v. King County,* 90 Wash. 200, 155 Pac. 773.

In the present case, we find, in addition to the presumption in favor of the assessments, active examination and investigation by, and knowledge on the part of, the assessor, together with due consideration by the board of equalization, to support the assessment and taxes complained of. To overcome this presumption of fairness of the assessment, appellant furnished, in effect, the testimony of its superintendent in the mine, who admits he has never made any personal investigation of any of the property outside of sections 20 and 21 (the Tono Mine) for the purpose of seeing whether or not coal lies under the surface, and no investigation of that character has been made by the company since he has been superintendent; and the testimony of appellant's mining engineer in charge at the mine, who says he did the prospecting work for appellant before the purchase of these lands and has been with appellant at all times since, that only two diamond drill holes had been made on any of appel-

lant's property outside of the immediate vicinity of the mine since the property was purchased, and that the company has not made any thorough investigation of the property, and finally, on cross-examination, he said that if he were asked by a prospective purchaser whether any other seams of coal, outside of sections 20 and 21, could be mined at a profit, he would want to make further investigation and spend money for that purpose before giving his opinion. Such proof is not sufficient to overcome the presumption in favor of the assessment upon which rest the taxes sought to be avoided.

Lastly, it is claimed appellant has been discriminated against because other lands in the community are free from such assessments. It is true that some of appellant's lands, as well as other tracts intermingled therewith, are not assessed for coal values, and that still other properties are so assessed, but the proof fails to show lack of foundation for these differences in the opinion and judgment of the assessing officers.

Judgment affirmed.

MAIN, C. J., and TOLMAN, J., concur.