PITTSBURG SILVER PEAK GOLD MINING CO. *v.* TAX COMMISSION

No. 2628

April 30, 1925.                                    235 P. 643.

1. Taxation—Statute Authorizes Presumption, in Absence of Evidence to Contrary, that Tax Officials Faithfully and Properly Performed their Official Duties.

   Stats. 1913, c. 134, sec. 6, *held* legislative declaration of general rule that it is presumed, in absence of evidence to the contrary, that tax officials faithfully and legally performed their official duties, and that in making an assessment they proceeded upon sufficient and competent evidence to justify their action.

2. Taxation—Valuations Placed on Property for Taxation Will Be Presumed To Be Reasonable.

   Valuations placed on property for taxation will be presumed to be reasonable.

3. Taxation—Clear and Convincing Proof is Necessary to Overcome Presumption of Reasonableness of Valuations of Property for Taxation Purposes.

   Clear and convincing proof is necessary to overcome presumption of reasonableness of valuations of property for taxation purposes.

4. Taxation—Depreciation of Mine by Exhaustion of Body of Ore Held Not Proper Deduction in Determining Net Proceeds for Assessable Purposes.

   Depreciation of mine by exhaustion of body of ore *held* not proper item for deduction, under Stats. 1913, c. 134, sec. 9, unaffected by Stats. 1917, c. 177, being 3 Rev. Laws, p. 3195, by tax commission, in determining net proceeds for assessable purposes.

5. Taxation—Mere Increase in Assessment Over Last Assessment Does Not of Itself Prove Subsequent Assessment as Illegal and Excessive.

   Mere increase in assessment over last assessment does not of itself prove subsequent assessment illegal and excessive.

6. TAXATION—VALUATIONS, ESTABLISHED AND EQUALIZED BY STATE
   TAX COMMISSION, HELD NOT EXCESSIVE.

   Valuations of mining property and railroad, established and
   equalized by the state tax commission pursuant to Act March
   20, 1913 (Stats. 1913, c. 134), sec. 6, *held* not so excessive as to
   give rise to implication of fraud or mala fides.

See 37 Cyc. p. 876, n. 99; p. 1030, n. 69; p. 1189, n. 11; p. 1190,
   n. 15 (new).

APPEAL from First Judicial District Court, Ormsby
County; *Frank P. Langan,* Judge.

Suit by the Pittsburg Silver Peak Gold Mining Com-
pany and another against the State Tax Commission
and others. From an order overruling their motion for
new trial, defendants appeal. **Reversed and remanded.**
(COLEMAN, C. J., dissenting.)

*M. A. Diskin,* Attorney-General, and *Thos. E. Powell,*
Deputy Attorney-General, for Appellants:

Rule in this class of cases is that judgment of state
board empowered to fix valuation for taxation cannot be
set aside by testimony of witnesses that valuation was
other than that fixed, where there is no evidence of fraud
or gross error. R. R. Co. v. Backus, 154 U. S. 421;
W. U. Tel. Co. v. Trapp, 186 Fed. 114; Adams Exp. Co.
v. Ohio, 165 U. S. 194; C. B. & Q. v. Babcock, 204
U. S. 585.

Board's judgment is not open to collateral attack.
State v. W. F. & Co., 38 Nev. 515; Marsh v. Arizona,
41 L. Ed. 567.

In McLeod v. Receveur, 71 Fed. 455, court gave same
faith and credit to judgment of board as it would to
one of court, citing Stanley v. Supervisors, 121 U. S.
535, to effect that such judgment can be impeached only
by direct proceeding.

Mere allegation that valuation was fraudulent with-
out more specific allegation of fact is insufficient.
Missouri v. Dockery, 48 L. Ed. 133.

Where evidence showed party was taxed upon his
own figures and according to statute, and no fraud

appears, party cannot be heard to complain that tax
was disproportionate to others. R. R. Co. v. Middle-
kamp, 65 L. Ed. 905.

Burden is upon complainant to show that valuation
is unjust and inequitable. Stats. 1913, 180.

Fact is that valuation as fixed by lower court is unjust
to state. Respondents stated before commission that
value was $540,000; that 60% of that amount, $324,000,
would be fair valuation for taxing purposes, yet lower
court fixed $200,000; respondents' report to commission
showed value to be $800,000, with annual depreciation
of $250,000; in latter part of 1912 and 1913 it produced
$700,000, but paid only $527 bullion tax and had net
earning of over $200,000. Judgment should be reversed.

*Platt & Sanford,* for Respondents:

Complainant need not prove fraud, but only that
valuation is unjust or inequitable. Stats. 1913, 180.

Since legislature has provided that court has right
to reduce valuation it follows obviously that it has right
to review findings of commission, which is not court
of last resort.

Statute provides property shall be assessed at full
cash value. In State ex rel. C. P. Co., 21 Nev. 179,
court quoted statute with approval and issued writ
directing commission to hear proofs regarding valua-
tion and fix it accordingly. State v. Miller, 38 Nev. 494.

Fact of matter is that respondents were cited by com-
mission to show cause why assessment for 1913 should
not be $680,000. After hearing, commission accepted
on recommendations of representatives of company
$540,620 as principal basis for assessed valuation, and
took 60% or $324,000 for that year instead of $680,000,
conceding position of respondents in present complaint
regarding assessment for 1914, when there was no doubt
that companies were on last legs and ready to be dis-
mantled. Instead of adopting substantially same means
for reaching assessed valuation for 1914, commission
raised levy from $33,250 in 1913 to $61,250 and ordered
auditor to place assessed valuation on mining property

at $420,000, $100,000 more than for 1913, without considering railroad at all. Not content with that, commission raised railroad from $61,000 to $102,000, making combined valuation $490,000; not content with that, and at very last moment, another raise was ordered for combined properties to $592,000. Can any just argument explain why commission placed valuation of $324,000 for 1913 and, knowing properties were depleted and being worked out, increased valuation to almost double in 1914?

It is idle to argue about bullion taxes or profits of milling; these matters were adjusted in conference. Respondents' allegations are supported by evidence and no member of commission appeared to explain or contradict them. No other testimony, except reports, was given, and none other is available to this court. Order should be affirmed.

## OPINION

By the Court, SANDERS, J.:

This is a tax suit of long standing. A decade has elapsed since it was begun. We refer to this in no spirit of criticism, but we feel that, when the validity of a tax is involved, the public, as well as the private taxpayer, is interested in the speedy determination of the question. A lengthy complaint was filed in March, 1915, in the district court for Ormsby County, against the Nevada tax commission and the then tax officials of Esmeralda County, the county in which the taxes were assessed. The case was tried in 1916, decided in 1918, and brought to this court on appeal from an order entered in July, 1923, overruling the defendants' motion for a new trial.

The Nevada tax commission was created under a special act of the legislature, approved March 20, 1913. Stats. 1913, p. 175. The act represents the most recent step in the direction of centralized control over the revenues of the state, taken with the view to more uniform assessments and higher valuations. The act

was evidently experimental, because it was expressly provided in its last section that:

"This act shall expire by limitation on February 15, 1917, unless revived by act of future legislature."

The act was revived in 1917. Stats. 1917, p. 328; 3 Rev. Laws, p. 3195. The act of 1917, however, is in no accurate sense involved in this case as the applicable law is found in the act of 1913. For this reason we shall not discuss a number of interesting questions suggested in the briefs with respect to practice and procedure under the present tax commission law.

The facts from which the controversy arose are not in dispute. They are substantially as follows:

Prior to January, 1916, and since 1907, the Pittsburg Silver Peak Gold Mining Company and its subsidiary companies, including the Silver. Peak Railroad Company, operated certain gold and silver mines in Esmeralda County of large value, and in connection therewith operated a quartz mill and reduction works and a local railroad, known as the Silver Peak Railroad, with a trackage of 19 miles wholly within Esmeralda County. The railroad was constructed to serve the mines, but was operated as a public utility. The mill and reduction works were operated in the name of the Pittsburg Silver Peak Gold Mining Company. We are not concerned with the manner of the operations of the combined companies. While they were all under the management and control of the Pittsburg Silver Peak Gold Mining Company, and for purposes of assessment for taxation were considered as a unit, the Silver Peak Railroad, because of its character as a public utility, was separately assessed. The separate valuations of the combined property create some confusion in the record, but, when it is considered that the combined companies were engaged in the one business of extraction, transportation, reduction, and sale of ores, the confusion may be brushed aside.

In the year 1914 the tax officials of Esmeralda County, acting under the general law, placed a valuation upon the mine improvements and mill for assessable pur-

poses for that year of $245,953. The tax commission, acting in pursuance of section 6 of the Act of 1913, for purposes of state equalization, raised the valuation to $480,000. The commission, acting under its original power of assessment of railroads, fixed the valuation of the Silver Peak Railroad, for purposes of taxation for that year, at $102,000, making the assessment covering mine improvements, railroad, and mill total $592,000. If these valuations had been permitted to stand, they would have yielded a state and county tax for the year 1914 of $13,740.72. The Pittsburg Silver Peak Gold Mining Company and the Silver Peak Railroad Company, being dissatisfied with the valuations, paid the December installment of the taxes under protest. In March, 1915, they brought this suit in equity, claiming that the valuations were illegal, excessive, and the manner of making them so unreasonable that the complainants were entitled to protection against the taxes, and sought judgment that the taxes in excess of 60 per centum of the true cash value of the combined property be adjudged null and void, and that the court determine the true value of the property to be that alleged in the complaint, and that it determine the fair and equitable tax to be paid thereon and order the excess tax paid under protest refunded. There was a full hearing upon pleadings and evidence. The court made no findings, but in its judgment recited that the valuations established by the tax commission were illegal, unjust, and inequitable, and fixed the value of the property for assessable purposes at $200,801.72, and adjudged and decreed the tax to be paid thereon to be the sum of $5,156.25, and ordered that the then treasurer of Esmeralda County forthwith repay to the plaintiff mining company $3,499.33, and to the plaintiff railroad company $792.90.

This brings us to the question upon which the decision of the case finally depends: Were the valuations established and equalized by the tax commission, under the evidence, unjust and inequitable? In determining this question, we are guided solely by the statute of 1913.

In the case of Nevada-California Power Co. v. Hamilton, 235 F. 341, citing State v. C. P. R. Co., 21 Nev. 179, 26 P. 225, 1109, it is held that the decisions of the Nevada tax commission, if rendered in accordance with law, as to matters within its jurisdiction, are conclusive, in the absence of fraud, save as otherwise provided by statute. Section 6 of the statute of 1913 confers upon the tax commission the power to raise or lower, for the purpose of state equalization, the valuations established by county assessors and county boards of equalization. The section contains this provision:

"Said Nevada tax commission, in that name, may sue and be sued, and shall be so named as defendant in any action at law brought under the provisions of this section, and the attorney-general shall defend the same, but the burden of proof shall be upon the complainant to show by clear and satisfactory evidence that any valuations established or equalized by said commission is unjust and inequitable."

1-3. We regard this excerpt from the section as being a legislative declaration of the general rule that it is presumed, in the absence of evidence to the contrary, that tax officials faithfully and legally performed their official duties, and that in making the assessments they proceeded upon sufficient and competent evidence to justify their action. State v. W. U. Tel. Co., 96 Minn. 13, 104 N. W. 567; Judson on Taxation (2d ed.), sec. 645. As stated by other authorities, the rule is that valuations placed on property for purpose of taxation will be presumed to be reasonable, and such presumption can be overcome only by proof that is clear and convincing. Washington Union Coal Co. v. Thurston County, 105 Wash. 208, 177 P. 774, 2 A. L. R. 1546.

To overcome the presumption recognized by the statute in favor of the valuations of the tax commission, the plaintiffs relied upon the testimony of W. A. Bradley, who was the general manager of all the operating properties, and B. A. Rives, who was the cashier of the plaintiff mining company and secretary of the plaintiff railroad company.

The witness Bradley testified in detail as to the facts which he considered should enter into the consideration of the question of the value of the property. The witness testified in a manner to carry conviction. The trial court adopted the opinions and estimates of the witness as to values, and reduced the valuation of the property fixed by the tax commission at $592,000 to $200,801.72.

4. The attorney-general invokes the rule that, when the valuation of property for taxation is intrusted by statute to the judgment of a tax commission, its decisions or findings raise more than a presumption of fact, and cannot be overcome by mere differences of opinions or theories as to values. State v. W. U. Tel. Co., supra; Judson on Taxation, sec. 551, and cases cited. The attorneys for the Pittsburg Silver Peak Gold Mining Company find no fault with the doctrine established by these authorities, but insist that, when the undisputed facts leave no room for a difference of opinion as to values, the rule has no application. It is argued that the uncontradicted proof is that on the dates the valuations were made it was known to the tax commission that the ore bodies would be entirely worked out and the mines exhausted within one year from that date, to wit, January 1, 1916, and this in fact happened; hence to increase the valuations of the mine plant, reduction works, and railroad, considered as constituent parts of the operating mines, resulted in a flagrant and palpable injustice to the owners. The section of the statute pertinent to the valuation of operating mines is section 9, which we quote in its entirety:

"In pursuance of the general supervision and control over the revenue system of the state, said commission is hereby empowered to investigate and determine the net proceeds of all operating mines. In pursuance whereof, said commission, in each instance, shall investigate and determine from all obtainable data, evidence and reports, the gross value of the bullion actually extracted from the reduction of the ores and the proceeds from the sale of the ores, of any mine, mining claim or patented mine, and to deduct therefrom

only such actual costs of extraction, transportation, reduction or sale of ores, as shall be deemed by said commission to be just, proper and reasonable, and not introduced to deprive or defraud the state of any portion of its just revenue; and in any suit at law arising under the provisions of this section, the burden of proof shall be upon the owner of such mine, mining claim or patented mine to establish that any item of cost disallowed by said commission, is, nevertheless, just, proper and reasonable, and not entered to defraud the state."

We do not think the legislature intended to cover the necessary depreciation of a mine by exhaustion of the ores, in determining the net proceeds for assessable purposes, by including such exhaustion within the deductions allowable for costs of extraction, transportation, reduction, or sale of ores. It is true the value of a mine is lessened from the partial exhaustion of the property. But in no accurate sense can such exhaustion of the body of the ore be deemed depreciation. Lynch v. Alworth-Stephens Co., 45 S. Ct. 274, 69 L. Ed. ——.

5, 6. It is argued on the part of the mining companies that the proof shows that the tax commission assessed the value of the combined property in 1913 at $324,000, and that the commission, in the face of the known fact that the mines would be exhausted within a year, raised the valuations in 1914 to $592,000, which act, it is insisted, was one of the most flagrant usurpations of power in the history of taxation in Nevada. Our answer, in short, to this broad assertion, is that, while the increase in the assessments was very great, still it must be borne in mind that a mere increase in the assessment does not prove that the last assessment is wrong. Something more is necessary before it can be adjudged that the assessment is illegal and excessive. Louisville & N. R. Co. v. Bosworth (D. C.), 209 F. 380; Pittsburg, etc., Ry. Co. v. Backus, 154 U. S. 421, 14 S. Ct. 1114, 38 L. Ed. 1031. Under our statute the burden was upon complainants to show by clear and satisfactory evidence that the assessments were unjust and

inequitable. We cannot say from the testimony that the tax commission, in making the assessments, applied a fundamentally wrong principle or refused to exercise its best judgment, or that the assessments as made were so excessive as to give rise to an implication of fraud or mala fides.

We therefore reverse the order overruling the motion of the tax commission for a new trial, and remand the cause back to the lower court, for such further proceedings as the parties may be advised.

It is so ordered.

DUCKER, J.: I concur.

COLEMAN, C. J.: I dissent.