## STATE v. TONOPAH EXTENSION MINING COMPANY

No. 2711

September 8, 1926.                    248 P. 835.

1. TAXATION.

Under Const. art. 10, sec. 1, as amended in 1906, providing that net proceeds of mines shall be taxed, and Stats. 1917, c. 177, sec. 13, providing that in determining net proceeds "actual costs" only of extraction, transportation, and reduction shall be deducted from gross value of extracted bullion, depreciation of mining, milling, and transportation plant and equipment, taxes and insurance, and cost of maintenance of offices outside state, *held* not deductible.

See 37 Cyc., p. 1030, n. 70 (new).

APPEAL from the Fifth Judicial District Court, Nye County; *Frank T. Dunn,* Judge.

Action by the State against the Tonopah Extension Mining Company. From a judgment for plaintiff, and an order overruling and denying motion for new trial, defendant appeals. **Order sustained, and judgment affirmed.**

*Thatcher & Woodburn* and *Cooke & Stoddard* for Appellant:

Immediately after adoption of tax commission act, conferences were held between commission and Mine Operators Association which resulted in agreement that mine operators would abolish separate milling and transportation corporations; that they were entitled to write off constant physical depreciation of equipment. Commission then put into effect rules for assessment of proceeds which allowed deductions from gross yield for all necessary administrative expenses except taxes, interest on bonds, or other indebtedness, and expense of maintaining outside offices other than mine offices. Relative to cost of extraction, it allowed all necessary expenses, including contemporaneous development and exploration; a depreciation charge equal to quarter annual installment of amount calculated to be written off annually to redeem 80 per cent of original cost of plant. While we do not claim this arrangement

constituted valid binding contract, yet, in absence of imperative reason to contrary, it should be accepted as correct interpretation of constitutional and statutory provisions. State v. Cole, 38 Nev. 215; State v. Brodigan, 35 Nev. 38.

It is question of fact for court to determine whether items claimed are properly deductible. On these questions evidence of expert accountants familiar with cost accounting is offered. As mining is "wasting" industry—the life of a precious metals mine is about ten years—plant and equipment are valueless except as scrap at end of life of mine.

Net proceeds are net profits. Hall v. Abrahams, 75 P. 882. They are residue left after deducting not only all direct, but also all incidental expenses. Commonwealth v. Alexander, 70 N. E. 1017.

Replacement and repairs are current maintenance; depreciation is deferred maintenance. Depreciation is inevitable fact no system of accounts can ignore. Repairs are chargeable to current operating expense; improvements and equipment should be projected proportionately over future. Northern Pacific v. North Dakota, 59 L. Ed. 735. Knoxville v. Knoxville Water Co., 53 L. Ed. 371.

In determining cost of transportation, outlays which pertain to it must be considered. We do not distinguish between so-called "out-of-pocket" costs and "actual" expense. Illustrations are found in outlays for maintenance of way and structures, general expenses, and taxes. Northern Pacific v. North Dakota, supra.

In N. C. Power Co. v. Hamilton, 235 F. 311, court received evidence as to income, operating expenses, taxes, depreciation and amortization, and, in arriving at net, deducted from operating revenue all usual current expenses and taxes, and actual physical depreciation at 3 per cent per annum, and also considered limited life of mining camp and deducted another 10 per cent depreciation for that reason, recognizing that depreciation is cost.

Taxes are operating expense. In Re Finland Decisions of N. Y. Board, P. U. R. Ann. 1923, 107.

Maintenance of business office in New York was necessary for convenient, efficient, and economical general management of business. Within reasonable limits company may manage its own affairs, and its judgment is conclusive in absence of bad faith. S. W. Tel. Co. v. P. U. Com. 67 L. Ed. 981.

We do not contend investment in property nor depletion of ore is operating cost, nor are we entitled to return on capital investment in plant. Interest on capital investment is not operating cost; depreciation is.

*M. A. Diskin,* Attorney-General, and *Jos. T. Murphy,* District Attorney, for the State:

Admitting tax commission had authority under Stats. 1913, sec. 9, to adopt rules for determining net proceeds, it was not authorized to enlarge provisions of Rev. Laws, 3687, which provides that from gross yield there shall be deducted "actual costs" of extraction, saving tailings, transportation, reduction, and sale. Morrill v. Jones, 106 U. S. 466; U. S. v. United Verde C. Co., 196 U. S. 207.

Officials have placed construction upon Rev. Laws, 3687, contrary to claims of appellant. This construction is entitled to great weight. U. S. v. Finnell, 46 L. Ed. 890; Copper Queen G. M. Co. v. Board, 84 P. 511.

Use of word "actual" limits meaning, and will not permit depreciation, construction costs, etc. Actual cost is distinguished from estimated price or market value and excludes everything in nature of profit or return on capital investment. Mayor v. The B. & A. R. Co., 100 N. E. 1014; Old Colony R. R. Co., 70 N. E. 62.

Continuous and uninterrupted use of "proceeds" for forty-two years established "net proceeds" was meant. 12 C. J. 712; State v. Cole, 38 Nev. 215.

Question is not to be viewed from standpoint of business venture. Only question is, did mine yield net proceeds for particular year they were assessed? Mammoth M. Co. v. Juab Co., 170 P. 78.

Defendant's contention that cost of plant should be prorated over estimated life of mine violates Rev. Laws, 3687, which states there shall be no allowance for expenses incurred prior to quarter for which assessment is made.

Depreciation is not actual cost item within meaning of statute. Coltness Iron Co. v. Black, Assessor (Eng.), 6 App. Cas. 315; Miller v. Coal Co., 120 N. Y. App. Div. 442.

Maintenance of offices outside Nevada cannot be deducted. Bassett v. Utah Copper Co., 219 F. 811.

Taxes are not proper deduction. Anaconda Copper Co. v. Junod, 227 P. 1001.

Test is not that item is cost and one that is just, reasonable and proper, but it must be an "actual" cost; that is just, reasonable, and proper, and not introduced to deprive the state of its just revenue.

## OPINION

By the Court, SANDERS, J.:

Pursuant to an arrangement between the tax commission of Nevada and the Nevada Mine Operators' Association, a voluntary association organized for the betterment and protection of the mining industry of the state, this action was commenced by the State of Nevada as a test case against the Tonopah Extension Mining Company, a member of said association, for the purpose of obtaining a judicial determination of the proper method of arriving at the net proceeds of mines, and for the purpose of ascertaining by judicial determination what items are properly deductible from the gross value of the bullion actually extracted from the reduction of the ores of any operating mine in arriving at its net proceeds for assessable purposes under the constitution and laws of Nevada.

The question has been submitted to us upon printed and oral arguments, and we are urged to decide the question on the ground that it is of vast interest to all the mining operations in the state, and is of vital

importance to the state, as it affects one of its largest sources of revenue.

The production and reduction of ores are a vital necessity to the people of this state—are pursuits in which all are interested and from which all derive benefit. Nature has denied to this state many of the advantages which other states possess, but, by way of compensation to her citizens, has placed at their doors rich and most extensive metalliferous deposits, in the development of which all the people of the state are directly interested. To this end, since 1867, the mining, milling, smelting, or other reduction of ores are declared by statute to be of a public use, and the right of eminent domain may be exercised therefor. Rev. Laws, 1912, sec. 5606; Dayton Mining Co. v. Seawell, 11 Nev. 394. But notwithstanding the fact that the mining industry is thus favored, it does not follow that it is in any way exempted from bearing its proportion of the burden of government.

The applicable law of the case is found in section 13 of chapter 177 of the Statutes of 1917, page 328, entitled:

"An act in relation to public revenues, creating the Nevada tax commission and the state board of equalization, defining their powers and duties, and matters relating thereto, and repealing all acts and parts of acts in conflict herewith."

The facts over which the controversy arose are not in dispute, and, for present purposes, may be shortly stated: The Tonopah Extension Mining Company is a corporation organized and existing under the laws of Arizona. The company maintains three offices, one in Arizona, one in New York City, and an office in Tonopah, Nye County, Nevada. The company is the owner and operator of a gold and silver bearing mine in Tonopah, Nye County, and it is also the owner and operator of a milling and reduction works situated upon its mining ground. The ores, when separated from the bed in which they are found, are delivered to the company's mill near by where they are crushed and reduced to bullion, shipped out of the state, refined, and sold.

Section 13 reads as follows:

"In pursuance of the general supervision and control over the revenue system of the state, said commission is hereby empowered to investigate and determine the net proceeds of all operating mines. In pursuance whereof, said commission, in each instance, shall investigate and determine from all obtainable data, evidence, and reports, the gross value of the bullion actually extracted from the reduction of the ores and the proceeds from the sale of the ores of any mine, mining claim, or patented mine, and to deduct therefrom only such actual costs of extraction, transportation, reduction, or sale of ores, as shall be deemed by said commission to be just, proper, and reasonable, and not introduced to deprive or defraud the state of any portion of its just revenue; and in any suit at law arising under the provisions of this section, the burden of proof shall be upon the owner of such mine, mining claim, or patented mine, to establish that any item of cost disallowed by said commission is, nevertheless, just, proper, and reasonable, and not entered to defraud the state."

It is conceded, or must be conceded, that this section of the statute is grounded upon section 1 of article 10 of the constitution, as amended by the people in 1906, which reads as follows:

"The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory, except mines and mining claims, when not patented, the proceeds alone of which shall be assessed and taxed, and, when patented, each patented mine shall be assessed at not less than five hundred dollars ($500) except when one hundred dollars ($100) in labor has been actually performed on such patented mine during the year, in addition to the tax upon the net proceeds, and also excepting such property as may be exempted by law for municipal, educational, literary, scientific or other charitable purposes."

After a full hearing upon the pleadings and evidence, the trial court rendered judgment against appellant for

the sum of $6,716.71, together with $671.67 (being 10 per cent thereof), as damages for the nonpayment of the taxes specified in the plaintiff's complaint for the years 1918 to 1920, inclusive.

Counsel for appellant state in their opening brief:

"It is our contention that (1) depreciation of mining, milling, and transportation plant and equipment, (2) taxes and insurance, and (3) the cost of maintenance of offices outside of the state (other than the cost incurred for the convenience of stockholders), are items which are properly deductible in arriving at the net proceeds of mines for the purpose of taxation."

Counsel do not draw in question the validity of the statute, but insist that the items are just, proper, and reasonable, and should be deducted in arriving at the net proceeds of plaintiff's mine for assessable purposes. Whether the deductions specified should or should not be made is a question of law, unmixed with any discretion upon the part of the court or the tax authorities, and if it was the intention of the legislature to restrict and limit such deductions to the actual costs only of extraction, transportation, reduction, or sale of ores, it would be an unwarranted assumption upon our part to extend the items to include deductions which were never intended by the legislature. We concede that, the statute being a tax measure, if there were any doubt as to its meaning, the doubt should be resolved in favor of the taxpayer. Undoubtedly a good deal of latitude is allowed the commission, but its power is not unbounded; on the contrary, its boundaries are delimited by the statute itself. The commission is directed to investigate and determine from all obtainable data, evidence, and reports, the gross value of the bullion actually extracted from the ore. When this is ascertained, the commission is directed to deduct therefrom *actual costs only* of extraction, transportation, and reduction or sale. The commission is particularly enjoined not to permit excessive deductions for extraction, transportation, and reduction or sale introduced to deprive or defraud the state of any portion of its just revenue. We regard

these directions as mandatory and must be strictly followed.

From the constitution we ascertain what it is that is taxed, namely, the net proceeds of mines. The obvious purpose of the statute, read in the light of the constitution, was to prescribe a definite and uniform method of determining net proceeds of mines for assessable purposes, to prevent mine operators from evading bullion taxes through reports of excessive costs of extraction, transportation and reduction of ores, and to give to mine operators an open door to the courts to establish that any item of cost disallowed by the commission is nevertheless just, proper, and reasonable, and not entered to defraud the state.

As stated in the decision of the court below, it was undoubtedly the intention of the people of Nevada and of the legislature that a definite and fixed rule or method should be adopted in arriving at net proceeds of mines, and this was done by adopting the "actual costs basis," and if the court should place any other construction upon the constitution and statute the same would be indefinite and uncertain, and in fact there would exist an open field for deductions never intended. This is the conclusion reached by the supreme court of Montana in Anaconda Copper Mining Co. v. Junod, 71 Mont. 132, 227 P. 1001. In construing a section of the Montana Code which made it imperative upon mine operators to file with the board of equalization a statement showing the "actual cost" of extraction, transportation, reduction, or sale of ores for the purpose of aiding the board in arriving at the net proceeds of mines for the purpose of taxation, the court held that it was the aim and intention of the legislature to find some definite and uniform basis for the determination of net proceeds of mines for taxation purposes. The court held that moneys expended for taxes and fire insurance premiums are not in the strict sense actually expended for extracting metals and minerals from the ore any more than salaries of officers not actually engaged in the working of a mine or superintending the management thereof,

and if a company owning a mine and also a reduction works could deduct a portion of its taxes as part of the cost of extracting metals and minerals from the ore, it would be in effect granting an exemption, at least to a certain extent, on the reduction works from taxation. Such would be the effect in this case if the items specified are allowable. The authorities seem to be unanimous in holding that depreciation of a mine by the exhaustion of the ore body is not a proper item for deduction in determining net proceeds of a mine for assessable purposes. This doctrine was recognized under the particular facts in the case of Pittsburg Silver Peak Gold Mining Co. v. Tax Commission, 49 Nev. 46, 235 P. 643.

There is much discussion between opposed counsel as to what is "net proceeds" within the meaning of the constitution and the statute. We find no reason or necessity for attempting to define the term "net proceeds" when the statute prescribes the method for arriving at the net for assessable purposes. The term "actual costs" as used in the statute has a well-known meaning among miners. The common sense of the thing is that it means the money actually expended in the extraction, transportation, and reduction of ores. The word "actual" is a word of limitation, as distinguished from all costs of conducting the business.

It is strongly urged that the items specified would be deductible in arriving at the net value of a public utility for assessable purposes, and no reason appears why they should not be considered in any instance as part of the actual cost in arriving at net proceeds of mines for the purpose of taxation. For taxation purposes, the test of the value of a utility property is what it will earn, or, in other words, its use value, but the same test cannot be applied under the mandate of our constitution and statute in reference to the taxation of the net proceeds of mines. Such items can hardly be deemed to have entered into the legislative purpose, and it would be a strained construction of "actual costs" to say that an operating mine is a public utility for assessable purposes. We do not think it necessary to follow the argument of counsel through all its refinements in reference

to the rule for arriving at the net value of a utility property for assessable purposes. The argument affords no test for determining the legislative intent under our constitution and statutes in reference to the taxation of mines.

The constitution says in effect: "Exempt the mine, but tax the net proceeds." The statute says in effect: "Deduct only the actual costs of extraction, transportation, reduction, or sale from the gross value of the bullion actually extracted from the mine, and the difference represents the value of the net proceeds for assessable purposes." If the legislature had intended that the items claimed by appellant could be taken into consideration as deductible items, it could have said so.

We are constrained to hold that the items claimed by appellant are not deductible as actual costs in determining the net proceeds of mines for purposes of taxation under the constitution and statute.

The judgment of the lower court is therefore affirmed, and the order overruling and denying appellant's motion for a new trial is sustained.