**UNITED STATES of America,**
**Plaintiff,**

v.

**NEVADA TAX COMMISSION,**
**Defendant.**

**Civ. No. 1842.**

United States District Court
D. Nevada.

Sept. 26, 1968.

10. 5 U.S.C. § 702.

Mitchell Rogovin, Asst. Atty. Gen., William Massar, Atty., Dept. of Justice, Washington, D. C., Joseph L. Ward, U. S. Atty., and J. G. Sourwine, Asst. U. S. Atty., Reno, Nev., for plaintiff.

Harvey Dickerson, Atty. Gen. of Nevada, and Robert A. Groves, Deputy Atty. Gen. of Nevada, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

THOMPSON, District Judge.

This action involves the applicability and legal incidence of the Nevada Sales

and Use Tax Act as applied to the transactions herein summarized. The State of Nevada, acting through the Nevada Tax Commission, has not disputed the Government's Statement of Facts, which are supported without controversy by the record, made as a basis for the Motion for Summary Judgment. A summary of these facts follows:

The Atomic Energy Commission, through its Nevada Operations Office, manages all the Government's nuclear detonation programs, some of which are conducted at the Nevada Test Site. Reynolds Electrical & Engineering Co., Inc. (Reeco), a Texas corporation, since December 1, 1952, has been engaged, under a written contract between Reeco and the Government, in rendering construction, maintenance and operation, health, medicine and safety, and architect-engineering services to the AEC in connection with its operation and maintenance of the Site.

On February 25, 1966, the Nevada Tax Commission made a deficiency determination against Reeco for taxes and interest aggregating $203,818.95 which it claimed to be due under the Nevada Sales and Use Tax Act with respect to the procurement and use of tangible personal property in performance of the contract during the period October 1, 1961 through December 31, 1961.

Cashman Equipment Co. is a seller of tangible personal property to Reeco for use in the performance of the contract, and on February 25, 1966, the Nevada Tax Commission also assessed a deficiency determination against Cashman in the amount of $570.16 for taxes, interest and penalties which it claimed was due under the Act with respect to sales made by Cashman during the period October 1, 1965 through December 31, 1965.

All the property with respect to the sale, purchase, procurement or use of which taxes were assessed and imposed was procured in accordance with the requirements and the procedures provided under the contract. The contract has always provided that "title to all property furnished by the Government shall remain in the Government * * *" and that "title to all materials, equipment, supplies and tangible personal property * * * purchased by the Government * * * the cost of which is allowable under this contract shall pass directly from the vendor to the Government." Payment for all property procured under the contract, except that furnished without charge by the Government or other AEC contractors, was made by checks drawn by Reeco on special bank accounts consisting of funds advanced by the Government under contractual provisions to the effect that title to the unexpended balance of any funds advanced and of any bank account established pursuant to this article shall remain in the Government. None of the property which was purchased from Cashman was purchased or resold for use or used in constructing improvements on or to real property under any contract with the Government.

Where property was paid for with advanced funds, it was procured in accordance with the terms of a purchase order issued to the supplier by Reeco which provided: "Title to all goods furnished hereunder shall pass directly from the seller to the Government at the f. o. b. point of delivery."

The Government has paid the deficiency determinations under protest. Its application for refund has been denied and this action was commenced to recapture the taxes paid.

In limbo are claims for similar use taxes on account of transactions after December 31, 1961 and for sales taxes on transactions after December 31, 1965 for which no deficiency determinations have been made under an agreement between the State and the Government postponing such determinations until final decision in this case.

## SALES TAXES

Since the opinion of the Supreme Court in First Agricultural National Bank of Berkshire County v. State Tax Commission, decided June 17, 1968,

392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138, the foundation of the State's argument to support the assessment of sales taxes on sales by Cashman to Reeco has been washed away. Concededly, a tax on sales to the Government is unconstitutional if the legal incidence of the tax falls on the vendee rather than the vendor (Kern-Limerick, Inc. v. Scurlock, 1954, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546), and the Nevada statute expressly exempts sales to the United States, its unincorporated agencies and instrumentalities. When the question is whether the tax affects federal immunity, the interpretation of the state taxing statute becomes a federal question and the impact of the incidence of the tax is a matter of federal rather than state determination. First Agricultural National Bank of Berkshire County v. State Tax Commission, supra; Kern-Limerick, Inc. v. Scurlock, supra. While the State argues that the incidence of the Nevada Sales Tax falls on the seller, not the buyer, the provisions of the Nevada Act [1] are not in substance distinguishable from the Massachusetts sales tax held not applicable to national banks in First Agricultural National Bank of Berkshire County v. State Tax Commission, supra. The sales tax must be passed on to the purchaser and the seller receives a commission for collecting it.

� Accordingly, all sales by retailers to Reeco under this contract, the purchase price being paid by the Government and title passing immediately to the Government, are sales to the United States immune from the Nevada Sales Tax.

## USE TAX

�an The assessment of use taxes extends the impact of the Nevada statute to the privilege of using property in Nevada by a government contractor in connection with its own commercial activities irrespective of the ownership of the property. All the tangible personal property in question is owned by the United States, whether purchased from retailers inside or outside the State, transferred from other government agencies or contractors, or otherwise acquired. If the Nevada Sales and Use Tax Act taxes the privilege of using property in the State regardless of ownership, there is no constitutional obstacle to such a tax despite the fact that the property is owned by the United States. United States v. Boyd, 1964, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713. The constitutional issue has been decided by the Supreme Court; hence the interpretation of the Nevada statute to reach the result contended for by the State does not impose upon us the duty "to decide * * * facts or constructions upon which constitutional issues rest" (Kern-Limerick, Inc. v. Scurlock, supra, 347 U.S. p. 121, 74 S.Ct. p. 410) and does not pose a question "whether the tax affects federal immunity". First Agricultural National Bank of Berkshire County v. State Tax Commission, supra. Whether the scope of the Nevada taxing statute, properly interpreted, embraces the privi-

---

1. N.R.S. 372.105: "Imposition and rate of sales tax. For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers at the rate of 2 percent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail in this state on or after July 1, 1955."
N.R.S. 372.110: "Method of collection of sales tax. The tax hereby imposed shall be collected by the retailer from the consumer insofar as it can be done."
N.R.S. 372.115: "Assumption, absorption of tax by retailers; unlawful advertising.
"1. It is unlawful for any retailer to advertise or hold out or state to the public or to any customer, directly or indirectly, that the tax or any part thereof will be assumed or absorbed by the retailer or that it will not be added to the selling price of the property sold or that if added it or any part thereof will be refunded.
"2. Any person violating any provision of this section is guilty of a misdemeanor."
N.R.S. 372.370: "Reimbursement to taxpayer for collection of tax. The taxpayer shall deduct and withhold from the taxes otherwise due from him 2 percent thereof to reimburse himself for the cost of collecting the tax."

lege of using property in this State regardless of ownership presents a question of state law, not federal law, in this context.

Unfortunately, we are not aided by decisions of the Supreme Court of Nevada construing the Nevada Sales and Use Tax Act. Defendant argues that the statute should be construed to include within its coverage the privilege of using federally owned property by a government contractor in commercial activities engaged in by the contractor for profit. Unquestionably, a use tax act can be adopted which will constitutionally impose such an exaction (United States v. Boyd, supra), and in 1965, the Nevada Legislature closed the loophole with respect to the ad valorem personal property tax.[2] But the Legislature has not amended the Sales and Use Tax Act to embrace expressly the fact situation here presented.

■ On comparison of the two statutes, it is a fair inference that the California Sales and Use Tax Act, in its then form, was used as a model for the Nevada Statute. California's interpretation of its statute is persuasive authority for us in these circumstances absent definitive interpretation by the Nevada Courts.

"The use tax is not a property tax. It is an excise tax for revenue purposes, levied on the privilege of use, storage, and consumption of tangible personal property within the state. Provisions of the constitution relating to property taxes have no application. The use tax is meant to operate as a complement of the sales tax so that all tangible personal property sold or utilized in the state is taxable once for the support of the state government. The two enactments are mutually exclusive, each imposing a tax on a. subject matter that is not taxed by the other. The purpose is to place local retailers on an equal footing with out-of-state competitors, who are exempt from the sales tax. It is the intent of the use tax to impose on those subject to it a tax burden equivalent to that of the sales tax." 43 Cal.Jur.2d Rev., § 29, pp. 376–377.

The Nevada Act, like California's defines use as follows: " 'Use' includes the exercise of any right or power over tangible personal property *incident to the ownership of that property,* except that it does not include the sale of that property in the regular course of business." (Emphasis added.) N.R.S. 372.-100; Cal.Rev. & Tax.Code 6009. The tax is imposed on the "storage, use or other consumption in this state of tangible personal property purchased from any retailer." N.R.S. 372.185, 372.190.[3]

2. N.R.S. 361.159: "Exempt personal property subject to taxation when leased to, used in business conducted for profit.

"1. Personal property exempt from taxation which is leased, loaned or otherwise made available to and used by a private individual, association or corporation in connection with a business conducted for profit is subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property.

"2. Taxes shall be assessed to such lessees or users of such personal property and collected in the same manner as taxes assessed to owners of personal property, except that such taxes shall not become a lien against such personal property. When due, such taxes constitute a debt due from the lessee or user to the county for which such taxes were assessed and if unpaid shall be recoverable by the county in the proper court of such county."

3. N.R.S. 372.185: "Imposition and rate of use tax. An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased from any retailer on or after July 1, 1955, for storage, use or other consumption in this state at the rate of 2 percent of the sales price of the property."

N.R.S. 372.190: "Liability for tax; extinguishment of liability. Every person storing, using or otherwise consuming in this state tangible personal property purchased from a retailer is liable for the tax. His liability is not extinguished until the tax has been paid to this state, except that a receipt from a retailer maintaining a place of business in this state or from a retailer who is authorized by the tax

Plaintiff alludes to the language "incident to the ownership" and "purchased from any retailer" as establishing legislative intent that the tax should be exacted only from a person who is an owner using property in this state. Defendant contends that the statutes tax any storage, use or other consumption of personal property in this State regardless of ownership, including use by a lessee, bailee, agent or independent contractor. Defendant says that "incident to the ownership of that property" describes the kinds of rights or powers over tangible personal property the Legislature meant to encompass and was not intended to assess the excise tax only against use by an owner. In final analysis, defendant is arguing for a divided ownership theory; that is, that the use tax is assessable against anyone who holds any of the incidents of ownership of the property (viewing ownership as a divisible bundle of rights) and uses, stores or otherwise consumes the property in this state.

This conception has been comprehensively considered and rejected by the California Supreme Court in an opinion which reviews all the similar statutory language in the California Act. In Union Oil Co. of California v. State Board of Equalization, 1963, 60 Cal.2d 441, 34 Cal.Rptr. 872, 386 P.2d 496, the California Court sustained the assessment of the use tax against an owner who had purchased the property in New Jersey and leased it there for intended use by the lessee in California. The leasing of the property for use by the lessee in California was held to be an exercise by the owner of an incident of ownership and, when followed by actual use of the property in California, the incidence of the tax attached. The Court said:

"The statutory definition of 'use' includes that exercise of dominion over property which takes the form of leasing it. The definition reads: ' "Use" includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business.' (Rev. & Tax. Code, § 6009.) The lease is an articulation of that right incident to the ownership of the property. Ownership is not a single concrete entity but a bundle of rights and privileges as well as of obligations. It finds expression through multiple methods. One such method is the lease. And where the owner physically uses the leased property, there, indeed, the ownership is exerted. When the tankers enter California the owner continues the exertion of its right of ownership through the instrument of the lease; the owner 'uses' the tankers in California. The taxing authority at the location where the owner expresses or exercises such ownership may properly find that such use constitutes a taxable use.

" *    *    *    *    *    *

"The concept that Cienega used and consumed the vessels in California effectuates the basic purposes of the use tax and the broad statutory construction which we must accord its provisions. As we stated in Chicago Bridge & Iron Co. v. Johnson (1941) 19 Cal. 2d 162, 165, 119 P.2d 945, 947: 'One of these purposes is to make the coverage of the tax complete to the end that the retail sales tax *    *    * will not result in an unfair burden being placed upon the local retailer engaged solely in intrastate commerce as compared with the case where the property is *purchased for use* or storage in California and is used or stored in this state. The two taxes are complemental to each other with the aim

---

commission, under such rules and regulations as it may prescribe, to collect the tax and who is, for the purposes of this chapter relating to the use tax, regarded as a retailer maintaining a place of business in this state, given to the purchaser pursuant to NRS 372.195 is sufficient to relieve the purchaser from further liability for the tax to which the receipt refers."

of placing the local retailers and their out-of-state competitors on an equal footing.' (Emphasis added; see also Brandtjen & Kluge v. Fincher (1941) 44 Cal.App.2d Supp. 939, 941–942, 111 P.2d 979, and Traynor, The California Use Tax (1936) 24 Cal.L.Rev. 175, 176–177.)

" * * * * * *

"Union, in an attempt to equate use with physical use, urges that we apply here the divisible theory of ownership, which determines the imposition of ad valorem taxes upon real property. As we shall show, however, the argument ignores the respective objectives of the use tax and the ad valorem tax.

"The use tax 'does not fall upon the owner because he is the *owner*, regardless of the use or disposition he may make of the property. It is imposed on certain of the *privileges* of ownership, but not on all of them.' (Douglas Aircraft Co., Inc. v. Johnson (1939) 13 Cal.2d 545, 551, 90 P.2d 572, 576; emphasis added.) The use tax frames an excise tax upon the privilege of utilizing property within this state in a certain manner. 'A privilege tax * * * is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved.' (Ingels v. Riley (1936) 5 Cal.2d 154, 159, 53 P.2d 939, 942, 103 A.L.R. 1.) The sales and use taxes encompass apposite privileges. 'A sales tax is a tax on the freedom of purchase * * *. A use tax is a tax on the enjoyment of that which was purchased.' (McLeod v. J. E. Dilworth Co. (1944) 322 U.S. 327, 330, 64 S.Ct. 1023, 1026, 88 L.Ed. 1304.)

"The provisions of the Sales and Use Tax Law demonstrate that the Legislature did not adopt for those taxes the divided ownership theory. That theory conceives of the lease as a transfer of part of the 'ownership' upon delivery of the property. Hence during the term of the lease the lessor cannot be the owner of 'tangible personal property' which he could 'use.' Yet the Revenue and Taxation Code, section 6006, as to the sales tax, rejects the divisible property theory, providing that bona fide lease transactions are *not* to be considered 'sales.' Section 6006 and section 6009, which defines use, comprise part of chapter 1 of the same statute and apply to the identical scheme of taxation. We cannot conceive that, despite the complementary composition of the taxes, the Legislature meant to enact the divided ownership theory for the use tax but not for the sales tax." [4]

In a less comprehensive discussion of a similar statute, the Kansas Supreme Court relied upon the language "incident to the ownership thereof" in a case on facts quite similar to those here involved to avoid the assessment of a tax against the use of government property by a government contractor in that state. General Motors Corp. v. State Commission of Revenue & Taxation, 1958, 182 Kan. 237, 320 P.2d 807.[5]

The Nevada Supreme Court has said that ambiguities in taxing statutes should be resolved in favor of the taxpayer. State v. Tonopah Extension Mining Co., 49 Nev. 428, 434, 248 P. 835.

The Nevada Sales and Use Tax Act not only expressly exempts from the sales tax sales to the United States, its unincorporated agencies and instrumentalities (N.R.S. 372.325) but also expressly states that the word "person" in the Act "shall not include the United States, this state, or any agency thereof" (N.R.S. 372.040).

The admitted facts conclusively establish that the United States is the owner of the property used by Reeco

---

4. Compare N.R.S. 372.060(2) " 'Transfer of possession', 'lease', or 'rental' includes only transactions found by the tax commission to be *in lieu of transfer of title*, exchange or barter" (Emphasis added.)

5. The Government's brief cites Chrysler Corporation v. City of New Orleans, 238 La. 123, 114 So.2d 579, and Avco Mfg. Corp. v. Connelly, 145 Conn. 161, 140 A. 2d 479, as supporting decisions.

against which the use tax was assessed. The United States is the "person" storing, using or otherwise consuming the property in this state (N.R.S. 372.190, fn. 3 supra). The Nevada statute taxes only uses by an owner-purchaser. The use in Nevada of this property owned by the United States is exempt from taxation under the Nevada law.

The plaintiff's Motion for Summary Judgment is granted. An appropriate form of Summary Judgment shall be submitted within thirty (30) days.