Deogracias Viera Rodríguez, Plaintiff and Appellant, *v.* Manuel V. Domenech, Treasurer of Puerto Rico, etc., Defendant and Appellee.

No. 7411. Argued March 18, 1938.—Decided June 16, 1938.

*Bolívar Pagán* for appellant.   *B. Fernández García, Attorney General,* and *M. Rodríguez Ramos, Assistant Attorney General,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an action for recovery of taxes paid under protest.

The Treasurer of Puerto Rico appraised for taxation purposes a piece of property of 40 acres (*cuerdas*) located in Hato Rey, Río Piedras, together with Race Track "Quintana" constructed within the same, in the sum of $194,020 for the year 1928–29, and in the sum of $188,040 for the year 1929–30. Feeling aggrieved by that assessment, the owner of the property, plaintiff Viera, after unsuccessfully exhausting his administrative remedies, resorted to the District Court of San Juan and alleged that he had proved before the Board of Review and Equalization that his property is of the same type and category as that in which the Race Track "Las Monjas" is located, without there existing any reason why the land on which his race track is situated should be valued at 50 cents per meter while the land of the Race Track "Las Monjas" should be valued at 20 cents per meter, and even less for assessing the lands and buildings of the Race Track "Quintana" at the rate of $1 per meter while similar land where the buildings of the Race Track "Las Monjas" are located were valued at the rate of 25 cents per meter; and

that likewise no reason existed for appraising the lands on the outside of the fence of the Race Track "Quintana" at 50 cents per meter while similarly located lands of the Race Track "Las Monjas" were valued some at 25 cents per meter and others at 20 cents per meter; and the plaintiff further alleged that notwithstanding the fact that he proved to the Board of Review and Equalization that the buildings of the Race Track "Quintana" were older than those of the Race Track "Las Monjas" and that in reality the buildings were similar, notwithstanding all this, the buildings of the Race Track "Quintana" were assessed at $74,630 for purposes of taxation and the buildings of the Race Track "Las Monjas" were assessed at $53,330 for the same purposes and for the same fiscal years."

He alleged moreover that the true value of his property was $93,887, and hence that the tax levied on the excess thereof was unfair and oppressive, which tax amounting to $2,688.66 he was forced to pay under protest. He prayed for a judgment directing the return of the amount so paid.

The Treasurer in his answer maintained the validity and fairness of his action and alleged that:

"The parcel of 40 acres occupied by the race track is an extension or part of the city improvement plan called 'Quintana', the lands of which were uniformly assessed at $1 per square meter.

"The track of the Quintana Racing Park, with a width of 25 meters and a length of one mile is a magnificent piece of work built with care and ability, its base upon a level surface, impermeable, absolutely smooth, filled with a coat of sand absolutely clear, ten or twelve inches in depth for greater comfort and lesser risk to the horses running upon the same.

"The work completed on this 'track' is the only one of its kind in Puerto Rico. It consists of four curves and a rectilineal stretch at the end which permits the horses greater speed and safety, this resulting in the improvement of records by two seconds in racing as compared to the 'tracks' of other racing courses.

"Taking into consideration the work performed, the material required (transportation of enormous quantities of sand from distant

places) and the land occupied, the value of $1 per square meter is reasonable.

"The land occupied by the building is assessed at the rate of $1 per square meter and such assessment is just if one considers the grounds already stated. In view of the solid structure of the property and the fact that the adjoining lots, that is, the city improvement plant of Quintana, are assessed at the same rate of $1 per square meter, there is no reason why the land occupied by the buildings of the race track, of better construction and value and more productive than those occupied by the city improvement section, should be assessed at less than $1 per square meter.

"With regard to the land occupied by the *'pelusse,'* that is, the center of the racecourse (*hipódromo*), it is of the same character as the land used in the city improvement section, but taking into account the use given to it in the business of which it forms part, it has been assessed at the rate of 50 cents per square meter.

"As to the constructions, there are two large, reinforced-concrete, steel, and zinc-roofed buildings, to accommodate the persons attending the races and dedicated to 'bleachers' and 'grandstands'; 'jury box', pool house, track house, ticket office, jockeys, cages, fence, and other dependencies in good condition and splendidly taken care of; they have an appraised value in relation to what they represent, for which reason the assessment made in the tax list is justified."

The case went to trial. Only one witness testified, namely, Ramón Llovet, civil engineer and surveyor, introduced by the plaintiff. His testimony covers 25 pages of the transcript, and summarizing it it might well be said that as a whole it concerns the different valuations given to the race tracks "Quintana" and "Las Monjas," both constructed under his direction and to the land on which they are situate, and the value which he personally gives to the lands and buildings.

After the case had been finally submitted to the court, the latter decided it against the plaintiff. In its opinion it said:

"In no part of the complaint is there alleged the commission of any irregularity in determining the value of the properties which served as a basis for the imposition of the tax; nor does it appear that the assessment was arbitrary or capricious. Moreover, it is not alleged that the Treasurer or the board proceeded in bad faith or

acted fraudulently or in excess of their authority or administrative discretion. Nor was there any showing that the Board was confronted with irrebuttable proof that the land where the Quintana Race Track is located is of the same type and category of that occupied by the Las Monjas Race Track. Perhaps the assessment of the lands and buildings of the Las Monjas Race Track is too low, but that error, if it exists, can not serve as a basis upon which to reduce the assessment of similar property of Quintana Race Track. The duty of the administrative officials is to proceed in all cases as far as possible within the law correcting therefore any error previously committed. However, the evidence of the plaintiff does not show that the assessment of Las Monjas Race Track is so correct that it should be taken as a rate of comparison, nor that the assessment of the Quintana Race Track is so excessive that it will give rise to a real and manifest oppression amounting to a clear and substantial injustice against which relief should be granted through the action brought.''

Feeling aggrieved by that decision, the taxpayer appealed and he has assigned in his brief three errors. The first assignment challenges the reasoning of the judgment and its holding. By the second, the weighing of the evidence is attacked; and by the third, it is maintained that the trial court erred in dismissing the complaint on the merits. All these assignments may be discussed together.

██ The appellant first refers to the terms in which Act No. 8 of 1927 (Session Laws, p. 122) is worded, authorizing the payment under protest and the subsequent remedy before the courts, and maintains that they do not require that fraud or bad faith be alleged or proved in order to have a right to a refund, but merely that it be alleged and proved that the assessment which served as a basis for the levy of the tax collected and paid under protest was unjust.

The first general statute authorizing actions for the recovery of taxes paid under protest was Act No. 35 of 1911 (Session Laws, p. 124). It recognized the right of a party who believed that a tax had been unjustly or illegally collected to pay it under protest and resort to the courts within thirty days to claim its refund.

This act was repealed by Act No. 17 of 1920 (Session Laws, p. 124), which started by saying that whenever any taxpayer believed that he should not pay a tax because it was "illegal, excessive or wrongful," he could pay it under protest and bring an action in the courts for the refund of what had been paid within a period of fifteen days.

In 1924, by Act No. 9 (Special Session Laws, p. 70), Act No. 17 of 1920 was repealed. The words "illegal, excessive or erroneous" were preserved and the term of thirty days for the bringing of an action in the courts was established.

In 1925, by Act No. 84 (Session Laws, p. 580), some sections of Act No. 9 of 1924 were amended, and in 1927, both acts, No. 9 of 1924 and No. 84 of 1925, were repealed by Act No. 8 (Session Laws of 1927, p. 122), which is the one at present in force. The words "illegal, excessive or erroneous" were eliminated and the taxpayer who "believes that he should not pay any tax or part thereof" was authorized to pay it under protest and resort to the courts for a refund of said tax within the term of one year.

The statutes, therefore, have been making the remedy easier and broader ever since 1911, but this does not mean that the questions raised within those actions should not be clarified and decided according to the applicable precedents and jurisprudence.

Here, for example, the only ground which the taxpayer alleges in support of his claim is that the assessment or valuation which was made of his property for the purpose of levying and collecting the tax was unjust and excessive, and it is only natural that those precedents and decisions should be followed which set out what the courts can and should do when cases of this kind are submitted to them.

In the case of *Swanson* v. *Snohomish County*, 71 P. (2d) 170, decided by the Supreme Court of the State of Washington in 1937, it was said that "an assessment is presumed correct, and burden rests upon property owner to show by clear and convincing evidence that land was assessed at such

an excessive valuation as to amount to constructive fraud." See also *Burke* v. *Stiles,* 18 A. 657.

An assessment is presumed fair and reasonable, as it is maintained in *Washington Union Coal Co.* v. *Thruston County,* 2 A.L.R. 1546, and, as it is said in Cooley On Taxation, 4th edition, volume 3, chapter 18, section 1199, page 2401, "in reviewing, so far as p·rmissible, the acts of a board of equalization, presumptions in favor of the correctness of their acts will be indulged, . . . The burden is on the objector to show the decision erroneous." See *Ensenada Estates* v. *Hill,* 24 P.R.R. 462; *Saurí & Subirá* v. *Treasurer of Porto Rico,* 26 P.R.R. 543; *Havemeyer* v. *Domenech, Treasurer,* 45 P.R.R. 699.

We agree with the appellant that it is not necessary to allege and prove fraud or extralimitation of authority in order to recover the tax paid under protest, but in accordance with all the precedents, we hold that in order to destroy the presumption of fairness which attaches to all actions of the Treasurer, clear and convincing proof is necessary to convince a trial court of the fact that the assessment made by the Treasurer and affirmed or modified by the board is so excessive that the tax imposed according to the same is in fact unjust and oppressive.

Experience shows how difficult it is to fix the true market value of property and the different opinions which may be maintained, in good faith, regarding this particular subject and for reasons which separately considered might seem to have great weight. Therefore, before the court is justified in substituting its own opinion for that of the Treasurer or the board it should appear from the evidence presented by the plaintiff that there was fraud, extralimitation of authority, false or erroneous basis, or the fixing of a value so clearly excessive that to maintain it would be to sanction a notorious injustice. After an examination of the pleadings and the evidence to which we referred at the beginning of this opinion, we do not believe that this is such a case.

Although it is true that some of the statements contained in the opinion of the trial court seem to demand too much, it appears clearly from its general phraseology that it placed itself in the middle and that it was because the testimony of the only witness for the plaintiff did not convince it that the assessment was fraudulent or made in bad faith or in excess of authority, nor that it was really excessive, that it dismissed the complaint. Admitting the difference between the assessments of the two race tracks, as the court very well said, the lower could have been the unjust one. No matter how respectable the testimony of the witness might have been as to his personal appraisal of the value of the land and of the buildings thereon, it was merely a case of an opinion against another, without there existing in support of the testimony of the witness any information, fact or ground so clear as to render his opinion manifestly superior to the adverse one.

In these circumstances, the appeal can not possibly succeed, and therefore the judgment appealed from should be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.