BOSTON MOLASSES COMPANY *vs.* MOLASSES DISTRIBUTORS CORPORATION.

Suffolk.   January 16, 1931. — February 25, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Landlord and Tenant,* Construction of lease.   *Words,* "Actual cost."

In a lease of a portion of a building, the lessee covenanted "to pay for all charges for gas, water, electricity or other agency used on the leased premises"; and the lessor agreed "to supply steam, compressed air, water, light and other facilities available to it and which may be necessary to the reasonable enjoyment of the premises of the Lessee" at rates "not in any event to exceed the actual cost without executive overhead to the Lessor." Steam for the entire building was supplied by a central plant in the control of the lessor. In proceedings involving a determination of the charge to be made to the lessee by the lessor for steam supplied to the leased premises, it was *held,* that

(1) The term "actual cost," as used in the lease, was not a technical one having at all times the same meaning: its meaning must be determined in the light of the circumstances in which it was used in the lease;

(2) In determining the "actual cost" of the steam supplied to the lessee, the lease permitted a consideration of fixed overhead costs, except "executive overhead," incurred by the lessor in maintaining and operating the steam plant;

(3) The portion of such fixed costs chargeable to the lessee should be determined on the basis of the amount of steam actually supplied to him from time to time according to his needs, as distinguished from fixed costs due to maintaining a constantly available supply of steam or due to maintaining a steam plant of sufficient capacity to supply the lessee's intermittent requirements: it was not to be determined on the basis of the possible maximum steam requirements of the leased premises, nor upon the steam actually used during the period of the lessee's maximum use of steam.

PETITION under § 20, added to G. L. c. 251 by St. 1925, c. 294, § 5, filed in the Superior Court on June 19, 1930, and seeking instructions to arbitrators selected to arbitrate certain controversies arising out of a sublease from the petitioner to the respondent.

The respondent filed a cross petition.   The case was heard

by *Weed*, J.  Material evidence and an order entered by the judge are described in the opinion.  The judge reported the case for determination by this court.

*R. H. Holt*, (*A. J. Bronstein* with him,) for the petitioner.

*C. P. Curtis, Jr.*, for the respondent.

SANDERSON, J.  This proceeding, brought under § 20 of G. L. c. 251 (a section added to that statute by St. 1925, c. 294, § 5), is a petition by the Boston Molasses Company, herein called the petitioner, for instructions to arbitrators upon a question of law arising under a lease from it to the Molasses Distributors Corporation, herein called the respondent.  The petition was heard in the Superior Court upon the pleadings and certain oral testimony.  An order instructing the arbitrators in conformity to a ruling made by the trial judge was entered and the case was reported for determination by this court, " such order to be made as law and justice may require."

The petitioner held under a lease certain premises in South Boston upon which it had conducted a molasses business.  On March 5, 1929, it sold to the respondent a part of the business, together with the buildings, structures and equipment previously used by it in that part, and sublet to the respondent for a period ending March 31, 1932, some of the land previously occupied by it in the conduct of its business.  The rent reserved in the lease purports to be for the premises demised with the rights of access and the right to maintain and operate pipes connecting certain tanks with the wharf and with other tanks.  The respondent covenanted " to pay for all charges for gas, water, electricity or other agency used on the leased premises."  The lease contained a provision for the arbitration of controversies.  The petitioner agreed " to supply steam, compressed air, water, light and other facilities available to it and which may be necessary to the reasonable enjoyment of the premises of the Lessee at the rates to be agreed upon between the parties, or, in the event of their failure to agree, to be determined by arbitration in accordance with the provision set forth in

the preceding paragraph, such rates are not in any event to exceed the actual cost without executive overhead to the Lessor." Later, when controversies arose, the parties agreed to submit them to arbitration under the provisions of the statute already referred to. The statement of controversies accompanying the agreement was in the following terms: " 1. The quantity of steam supplied by Boston Molasses Company to Molasses Distributors Corporation from March 5, 1929, to December 31, 1929, and the price to be paid for same, all in accordance with the provisions of lease between the parties dated March 5, 1929. 2. Price to be paid by Molasses Distributors Corporation to Boston Molasses Company for steam supplied after December 31, 1929, and the method of determining the quantity so supplied, both in accordance with the provisions of said lease."

On July 15, 1930, an award signed by a majority of the arbitrators was filed, but no judgment has been entered thereon. Majority and minority reports were also filed. The award determined the quantity of steam supplied by the petitioner to the respondent from March 5 to December 31, 1929, and the price to be paid for the same, and established a rate for the steam which should be used after the latter date. This rate consisted of two parts, a fixed operating cost per month in a stated sum and a coal and water charge. In their report the arbitrators stated in some detail the method adopted by them in reaching the conclusions appearing in the award. The items found by them to enter into fixed operating cost were interest and depreciation, taxes, fire, boiler and liability insurance, rent, maintenance, repairs, supplies, light, labor and supervision. These fixed costs were found by them to be " a part of the total cost of producing steam and as they are yearly costs the Arbitrators agree that they should be distributed at an average monthly rate and be a part of the monthly charge for steam in proportion to the relative average amounts of steam taken by the users. They are apportioned as a monthly average, instead of a varying

amount figured each month on the basis of the actual steam used during that month, as the former method seems simpler and gives the same yearly result. These are not service charges as they are not based upon a demand but are fixed expenses distributed over the steam used."

On June 19, 1930, the petitioner filed its petition seeking to have the arbitrators instructed that in determining fixed costs they might have regard to cost of maintaining a constantly available supply of steam and maintaining a steam plant of sufficient capacity to supply the respondent's intermittent requirements. On August 2, 1930, the respondent filed a cross petition for instructions in which it seeks to have the arbitrators prohibited from including in the fixed costs interest and depreciation on the plant, taxes on the structure, equipment and site, fire, boiler and liability insurance, rent of the site, and maintenance and repairs of the plant.

It appears from an exhibit in the case purporting to be a letter dated September 5, 1930, from the arbitrators who made the award to counsel for the petitioner, that the reasons for the conclusions reached by them were based upon the terms of the lease and the statements accompanying the submission of controversies, and that they felt that in determining rates they could not apportion the fixed costs of maintaining the steam plant and head of steam on the basis of relative steam capacity requirements of the petitioner and respondent, and that they were bound in determining the rate to apportion against the respondent a part of the fixed costs based only on the amount of steam actually used by the respondent without regard to any part of the fixed costs due to maintaining a constantly available supply of steam or due to maintaining a steam plant of sufficient capacity to supply the respondent's intermittent requirements.

The steam used in the conduct of the business retained by the petitioner as well as in the conduct of the business sold to the respondent is generated from a central plant which formerly served the entire business. It consists of

two boilers of one hundred fifty horse power each, located on the part of the premises retained in the control of the petitioner. The machines acquired by the respondent, if all used simultaneously at maximum capacity, would require two hundred sixty-three boiler horse power for their operation. Those of the petitioner, if all used simultaneously at their maximum capacity, would require thirty-seven boiler horse power. The maximum boiler horse power actually used by the respondent at one time according to meter readings taken by the petitioner over a period of one month was eighty-six and the maximum used by the petitioner over a like period of observation was thirty-two, and that used by the machines of both parties when operating at the same time was one hundred eighteen. A comparison between the computed total amount of steam produced by the two boilers during the period of approximately ten months, from March 5, 1929, to December 31, 1929, with the steam actually supplied to the respondent during the same period indicated that the amount so supplied to the respondent was approximately forty-three per cent of the steam produced, and it was on this basis that the arbitrators apportioned the steam to the parties and determined the fixed operating cost to be borne by the respondent, with a provision for varying the rate from year to year to meet changes in conditions.

The trial judge granted the petitioner's requests for rulings to the effect that the terms of the lease did not prevent the arbitrators in determining rates from considering fixed costs of maintaining and operating the steam plant. He declined to rule that the fixed costs might properly be apportioned on the basis of the relative maximum requirements of the respondent and the petitioner for steam to be supplied by the steam plant of the petitioner, and he also declined to rule that fixed costs based only on the relative amounts of steam used by the petitioner and respondent without reference to the maximum requirements of each do not represent the

actual cost to the petitioner of supplying the steam within the meaning of the contract. The judge stated in the order entered in the case that " the arbitrators are agreed that certain so called ' fixed costs,' including interest, depreciation, maintenance, repairs, taxes, insurance and rent of site, of the boiler plant of the lessor, shall be taken into account in determining ' actual cost ' but differ in their method of apportioning such ' fixed costs ' as between the lessor and lessee." He ruled upon the pleadings and the evidence that " it was the intent of the covenant in issue that rates determined by the arbitrators for supplying steam to the lessee shall not exceed the actual cost to the lessor of supplying such steam, that ' actual cost' means cost actually incurred, and may properly take into account the items of so called ' fixed costs ' above enumerated, attributable to supplying steam to the lessee, and that no rates so determined shall make a charge to the lessee irrespective and independent of steam supplied." The arbitrators were instructed in conformity with the ruling quoted.

The construction of the lease depends upon the intention of the parties to be ascertained by considering all its terms, giving to the words used the natural and reasonable meaning in the light of the facts to which they apply and the circumstances in which they are used. *Grennan* v. *Murray-Miller Co.* 244 Mass. 336. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 150, 151. *Lovell* v. *Commonwealth Thread Co. Inc.* 272 Mass. 138, 140, 141. Some liberality of construction in favor of a lessee has been suggested in case the terms of a lease are of uncertain or doubtful meaning. *Carpenter* v. *Pocasset Manuf. Co.* 180 Mass. 130, 133. *Watts* v. *Bruce,* 245 Mass. 531, 534. The term " cost " or " actual cost " is not a technical one having at all times the same meaning. It is a general or descriptive term which may have varying meanings according to the circumstances in which it is used. In *Fillmore* v. *Johnson,* 221 Mass. 406, 412, the court held that upon the facts the actual cost of finishing paper should include

such fixed charges as heat, light, rent, office expenses, superintendence, repairs, depreciation and other incidentals. See *Municipality of Bulawayo* v. *Bulawayo Waterworks Co. Ltd.* [1908] A. C. 241, 247.

Under the terms of the lease the arbitrators had a right to take into consideration in determining the cost of steam the overhead expenses enumerated in their report. The exclusion of "executive overhead to the Lessor" from the "actual cost" in defining the limit which the rates by the arbitrators could not exceed by implication suggests that the parties contemplated that other overhead expenses might be included. The case of *Stanwood* v. *Comer,* 118 Mass. 54, is not controlling authority to the contrary. The lease there contained no such provision as to executive overhead. It was a lease of part of a building. The owner bound himself to put in "proper apparatus" to heat the building by steam. The clause in the lease concerning which the controversy arose was the lessee's agreement "to pay the proportionate part of the expense of heating" the building by steam. The court interpreted the covenant to mean that the lessee would contribute his proportion of the actual outlay or expenditure incurred in the current, ordinary and regular supply and management of that apparatus for the general benefit of the tenants, and held that the tenant was not liable for the interest on the cost of the heating apparatus and its appliances, the expense of keeping them in repair and their depreciation in value. The terms of the lease in the case at bar, the subject matter to which they apply and the circumstances known to the parties when the lease was executed distinguish this case from that last cited.

It is not entirely clear whether the petitioner's contention is that the arbitrators should be instructed that in determining rates they may take into consideration the cost of maintenance of a three hundred boiler horse power plant and the steam consumption capacity of the respondent's machinery, with its potential demands, or

that they may base the rates only on the maximum boiler horse power actually used during the month of the respondent's maximum use of steam. In our view of the case neither of those positions is tenable. The natural meaning of the agreement, to supply steam at a rate not to exceed actual cost, would seem to be cost of steam so supplied as distinguished from steam not supplied but held in readiness to be supplied if required. The agreement did not in terms impose upon the petitioner the obligation to supply the maximum amount of steam which could be used on the premises leased to the respondent. The limitation upon the quantity to be supplied expressed in the words " available to it " and " may be necessary to the reasonable enjoyment of the premises of the Lessee " would seem to indicate that costs were to be based not upon the maximum used in a single month or the maximum capacity of the machines upon the respondent's premises, but upon steam that might be used from time to time according to the demands of its business. It is for such steam that rates are to be determined by agreement or arbitration. The provision in the lease making actual cost the limit which rates may not exceed applies to rates for supplying compressed air; water, light, and other facilities as well as steam. As to all of them the basis for the rates would seem to be the same and to depend upon actual use or consumption and not upon what might have been but was not used. This conclusion finds support in the express covenant of the respondent concerning the matter wherein it promises " to pay for all charges for gas, water, electricity or other agency used on the leased premises." In our opinion the lease did not contemplate that the respondent should be required permanently to be charged a fixed cost based either upon the boiler horse power of the plant or on the maximum amount of steam used by it in a single month. Under the terms of the lease the respondent's portion of fixed costs was rightly based on the amount of steam actually supplied to the respondent as distinguished from

fixed costs due to maintaining a constantly available supply of steam or due to maintaining a steam plant of sufficient capacity to supply the respondent's intermittent requirements.

No error appears in the ruling of the trial judge as to the meaning of the lease, and his order instructing the arbitrators in conformity with that ruling is affirmed.

*So ordered.*