**PEPCOL MANUFACTURING CO., a Colorado corporation, Plaintiff-Appellee,**

**v.**

**DENVER UNION CORPORATION, a corporation, and Western Stock Center, Inc., a corporation, Defendants-Appellants.**

No. 81CA0446.

Colorado Court of Appeals,
Div. III.

March 31, 1983.

Rehearing Denied April 21, 1983.

Certiorari Granted Aug. 29, 1983.

Quiat, Bucholtz, Bull & Laff, P.C., Alan H. Bucholtz, Denver, for plaintiff-appellee.

Tilly & Graves, P.C., Greg L. Perczak, Denver, for defendants-appellants.

VAN CISE, Judge.

Plaintiff (buyer) instituted this action to recover amounts advanced by it and not repaid by defendants (seller) for water line construction. Judgment was entered in favor of buyer, and is not challenged on this appeal. Seller counterclaimed for the bal-

ance due for water service provided to buyer for the period June 1973 through 1976. Seller appeals the judgment dismissing that counterclaim. We reverse.

From the inception of its stockyards business, seller has operated a cooperative water system, obtaining water from Denver through its Board of Water Commissioners, and distributing it to various users in the stockyards area. Seller consumed no water itself. Buyer commenced business operations in the stockyards area in 1971 and arranged for water from seller under a contract which provides that "water usage by buyer shall be metered and the charges of water so used shall be paid by buyer . . . at seller's cost."

In 1973 seller discovered that it was costing it 20 to 25% more for water than it was receiving back from the users, including buyer. Seller had assumed previously that it was breaking even on water cost by billing its users on the same per gallon rate as that charged by Denver. Therefore, commencing as of June 1, 1973, it changed its manner of billing. In effect, it itemized all of the users' interior meter readings and the total consumption indicated thereon. It then computed each user's per cent of the total consumption based on the interior meter readings, and charged each user its per cent of the total usage times the water bill from Denver. The water bill for the period June 1973 through 1976 was approximately $100,000; the buyer's per cent of the total consumption was approximately 60% of the total usage; buyer was charged approximately $60,000.

Buyer refused to pay the additional amount over the per gallon rate charged by Denver, which for the period pertinent to this case. June 1973 through 1976, is admitted to be $10,732.39. The trial court held for the buyer on the basis that since it had a separate meter which showed the amount of water received by it, it should only have to pay the per gallon rate charged to seller by Denver.

The trial court found that the contract provision quoted above is clear and unambiguous. We agree. However, we agree with seller that the trial court misconstrued the term "seller's cost."

Where the determination of an issue depends on the construction of a written document, we are not bound by the trial court's findings or conclusions and may resolve the issue as a matter of law. *Radiology Professional Corp. v. Trinidad Area Health Ass'n.* 195 Colo. 253, 577 P.2d 748 (1978); *Southeast Colorado Co-operative v. Ebright,* 38 Colo.App. 326, 563 P.2d 30 (1977). Words used in a document are to be given their plain and generally accepted meaning. *Buckley Bros. Motors. Inc. v. Gran Prix Imports,* 633 P.2d 1081 (Colo. 1981).

The terms of the agreement require buyer to pay for its water "at seller's cost." "Seller's cost" means the expense to seller to provide water to its users. *See* §§ 6–2–105(2) and 6–2–105(3), C.R.S. 1973; *Flank Oil Co. v. Tennessee Gas Transmission Co.,* 141 Colo. 554, 349 P.2d 1005 (1960). *See also United States v. Douglas Aircraft Co.,* 62 C.C.P.A. 53, 510 F.2d 1387 (1975); *Cassel v. Newark Insurance Co.,* 274 Wis. 25, 79 N.W.2d 101 (1956); *Hessey v. Capital Transit Co.,* 193 Md. 265, 66 A.2d 787 (1949); *Boston Molasses Co. v. Molasses Distributors' Corp.,* 274 Mass. 589, 175 N.E. 150 (1931). In this case, for billing purposes seller included in its "cost" only its direct cost for water. Buyer's protest is without merit.

The formula for allocation of the water cost among the users and the $10,732.39 additional amount as buyer's proportionate share have not been challenged.

The judgment on the counterclaim is reversed, and the cause is remanded to the trial court for entry of judgment thereon in the amount of $10,732.39 plus statutory interest from the due date of each installment.

KELLY, J., concurs.

KIRSHBAUM, J., concurs in part and dissents in part.

KIRSHBAUM, Judge, concurring in part and dissenting in part.

I concur with the majority opinion insofar as it reverses the trial court's judgment. I dissent, however, from the majority's conclusion that on remand the trial court should enter judgment for seller on seller's counterclaim.

The majority concludes, as the trial court did, that the term "seller's cost" is "clear and unambiguous." In the context of the clause in which it appears in this agreement, I find the term ambiguous.

The contract in question is a purchase and sale agreement respecting specific real property. By its terms, the seller granted the buyer a number of easements, rights of access, and other rights for use in connection with the subject property, including the following:

> "The right to connect for water usage to the existing water line owned by Seller located on the east side of the property without payment of a tap fee therefor to Seller (it is understood however that the hookup and meter installation charges shall be at Buyer's expense and that water usage by Buyer shall be *metered* and the charges of water *so used* shall be paid to Buyer, its successors or assigns or designee at Seller's cost) . . . ." (emphasis added)

The evidence at trial established that the buyer installed a water meter on the subject property at the juncture of water pipelines owned by buyer and by seller. Other property owners sharing seller's pipeline system also installed individual meters on their property.

In essence, the parties dispute which meter in the system is to be used to measure the water subject to the "seller's cost" provision. Such dispute arises because the agreement specifically refers to "metered" water as the only water subject to the "seller's cost" reimbursement language. As argued at trial, the question was whether buyer is responsible for a formula-based pro rata share of seller's cost of water measured at the main meter, prior to any distribution of water to buyer and other users, or whether buyer is responsible only for the amount of water actually used by it, as measured by the meter it installed on its property. Either interpretation is reasonable, practical, and supported by the disputed words in context. Therefore, I deem the phrase ambiguous. *See Fenimore v. Stauder*, 34 Colo.App. 309, 527 P.2d 943 (1974).

Both the trial court, in its final order, and the majority opinion referred to billing practices of the seller in reaching opposite resolutions of this contract dispute. Resort to such parol evidence and the practices of the parties is essential for the just resolution of the issue. Other evidence elicited at trial indicated that for two years after the signing of the agreement the parties' billing practices reflected buyer's interpretation of the contract. However, the trial court prohibited seller from introducing additional parol evidence respecting business practices. I agree with seller's alternate argument that this ruling was erroneous and prejudicial. Hence, on remand, I would direct the trial court to conduct a new trial, permitting the introduction of parol evidence by seller as well as by buyer to determine the intent of the parties in adopting the ambiguous clause requiring buyer to reimburse seller for metered water at seller's cost.