The Honorable Steve Faris State Senator 29476 Highway 67 Malvern, Arkansas 72104-6833
Dear Senator Faris:
I am writing in response to your request for an opinion concerning the limits of "Proposed Constitutional Amendment No. 1" adopted by the voters at the 2005 general election.[1] As you note, this Amendment, "among other things, allows authorized organizations to conduct bingo games and raffles." You first mention subsection (1)(a)(1) of the Amendment, which defines an "authorized bingo and raffles organization" as:
 . . . a nonprofit tax-exempt religious, educational, veterans, fraternal, service, civic, medical, volunteer rescue service, volunteer firefighters organization, or volunteer police organization that has been in continuing existence as a nonprofit tax-exempt organization in this state for a period of not less than five (5) years immediately prior to conducting the game of bingo or raffles.[2]
You then set out subsection 1(b)(1) of the amendment, as follows:
 The game of bingo or raffles conducted by an authorized bingo and raffles organization shall not be a lottery prohibited by Section 14 of Article 19 of the Arkansas Constitution if all net receipts over and above the actual cost of conducting the game or raffle are used only for charitable, religious, or philanthropic purposes.
You then state that: "Section 1(b)(1) appears to contemplate that the "authorized organizations" will have costs associated with conducting bingo games, because it requires that all "net receipts" be used for "charitable, religious, or philanthropic purposes."
You state that your first question is therefore:
 1. [W]hether the amendment places any restrictions on what can be considered the "actual cost of conducting the game or raffle." For example, you ask, "would it permit an authorized organization to consider such expenses as rent, bingo equipment, utilities, staffing, and maintenance or to contract for any of these services?"
You then refer to Subsection 1(b)(2) of the Amendment, which provides that:
 No receipts shall be used to compensate in any manner any person who works for or is in any way affiliated with the authorized bingo and raffles organization.
You state that your second question "pertains to the meaning of the words `in any way affiliated with.'" You state that "Black's Law Dictionary (6th Ed. 1991) defines `affiliate' as signifying `a condition of being united; being in close connection, allied, associated, or attached as a member or branch.'" You assert that such definition would not appear to include an independent entity that is under contract to perform the types of services described above to the authorized organization, but that "the amendment is not entirely clear on this point." Your second question is therefore:
 2. [W]hether Section 1(b)(2) would prohibit the use of receipts to pay for the types of expenses described above if incurred by an entity that is under contract to provide such services to the authorized organization? For example, if an authorized organization has a cleaning contract with a local janitorial service, does such contract mean that the janitorial service is "affiliated with" the organization?
 RESPONSE
In my opinion the answer to your first question is "yes," the Amendment places restrictions on what can be considered the "actual cost of conducting the game or raffle." The phrase "actual cost" as used in the Constitution is itself a restriction on the type of items of expenditure that may be included. Such phrases are ultimately subject to interpretation by the judicial branch. In addition, the Amendment contains a prohibition against compensating "in any manner" any person who works for or is "in any way affiliated with" the authorized organization. Any such payments or compensation can therefore not be deemed "actual costs" under the Amendment. In response to your second question, regarding whether the Section 1(b)(2) prohibition against using receipts to compensate persons "affiliated with" the organization prohibits payments for contractual arrangements to provide services, it must be noted as an initial matter that the Amendment legalizes charitable bingo and raffles only to the extent that an authorized organization "conducts" the activity. The Amendment contains a restriction as to who may "conduct" the games or raffles. Only authorized organizations may "conduct" bingo or raffles. Otherwise, the activity is not authorized. In my opinion the term "conduct" would be interpreted by the Arkansas Supreme Court as having been used in its common and ordinary sense — as to direct, manage, operate or execute the games or raffles. Any costs to pay a person or entity other than the authorized organization to "conduct" these activities, in my opinion,a fortiori, cannot be considered an "actual cost" of conducting bingo or raffles and cannot be paid from receipts of the game, whether through contractual arrangements or otherwise. As a consequence, in my opinion any contractual services that entail "conducting" the activities (as that term is commonly understood), are necessarily prohibited without any reference to the "affiliated with" proscription. Such contracts may of course also be prohibited under the "affiliated with" prohibition. In my opinion contractors who agree with a charitable organization to provide a comprehensive or broad range of services necessary to bring about the operation of bingo games or raffles would almost invariably be deemed to be both "conducting" the games and to be "affiliated with" the organizations for purposes of the Amendment. Other types of contractual services (services that do not entail "conducting" the activity), such as the janitorial services you mention, may or may not be permissible under the "affiliated with" prohibition, depending upon the facts. The General Assembly or a regulatory agency may have some authority to define the permissible scope of such contracts. In reviewing such contractual services, however, the prohibition against payments to persons "affiliated with" the organization would in my opinion be given an expansive interpretation, in light of the introductory words "in anyway affiliated with."
Question 1 — [W]hether the amendment places any restrictions on whatcan be considered the "actual cost of conducting the game or raffle."For example, you ask, "would it permit an authorized organization toconsider such expenses as rent, bingo equipment, utilities, staffing,and maintenance or to contract for any of these services?"
In my opinion the answer to this question is "yes," the Amendment does place some restrictions on what can be considered the "actual cost" of conducting the game or raffle.
As an introductory matter, it may be helpful to review the standards for construction of constitutional amendments. It has been stated that in matters relating to constitutional amendments, the intent of the people is controlling. Bailey v. Abington, 201 Ark. 1072,149 S.W.2d 573,148 S.W.2d 176 (1941). See also Faubus v. Kinney, 239 Ark. 443,389 S.W.2d 887 (1965). The Arkansas Supreme Court has stated that in interpreting constitutional provisions, it may be helpful to determine what changes the constitutional amendment was intended to make and the history of the times and conditions existing at the time of adoption.State v. Oldner, 361 Ark. 316, 79 S.W.3d 831 (2005); Brewer v.Fergus, infra and Bryant v. English, 311 Ark. 187, 843 S.W.2d 308
(1992). The court should constantly keep in mind the object sought to be accomplished by an amendment's adoption, and the evils, if any, sought to be prevented or remedied, and effect should be given to the purpose indicated by a fair interpretation of the language used. Bailey,supra at 1078-79. The court will endeavor to effectuate as nearly as possible the intent of the people in passing the measure, and, if necessary, as a means of attaining that end, a liberal interpretation will be warranted. Pakay v. Davis, 06-360 (Ark.Sup.Ct. 10-12-2006). The intention is to be gathered from both the letter and the spirit of the instrument. See Bailey v. Abington, supra and State v. New York LifeIns. Co., 119 Ark. 314, 173 S.W. 1099 (1915). As noted in Brewer v.Fergus, 348 Ark. 577, 583, 79 S.W.3d 831 (2002), the words of the constitution should ordinarily be given their obvious and natural meaning. A court must therefore ascertain the "natural signification" of the words used. Carter v. Cain, 179 Ark. 79, 14 S.W.2d 250 (1929). The words used, unless they are technical, are to be understood in their usual and ordinary sense. State v. New York Life Ins. Co, supra.
Finally, the Arkansas Supreme Court has stated that "[i]t is the duty of the Judicial Department to interpret the Constitution." Parkin,supra. See also Lake View School District No. 25 v. Huckabee,351 Ark. 31,91 S.W.3d 472 (2002) (quoting Rose v. Council for Better Education,Inc., 790 S.W.2d 186, 208-10 (Ky. 1989) to the effect that: "The judiciary has the ultimate power, and the duty, to apply, interpret, define, and construe all words, phrases, sentences and sections of the . . . Constitution").
With these principles in mind, we may now turn to your first question, which is whether the Amendment places any restrictions on what can be considered the "actual cost" of conducting the game or raffle. In my opinion the Amendment does contain some restrictions in this regard. Again, the pertinent language of the Amendment related to "actual cost" states that bingo and raffles will not be considered a lottery "if all net receipts over and above the actual cost of conducting the game orraffle are used only for charitable, religious, or philanthropic purposes." (Emphasis added).
In my opinion the use of the phrase "actual cost of conducting the game or raffle" itself imposes a restriction on the type of items that may be deducted to arrive at net receipts under the Amendment. As stated above, the construction of this phrase is ultimately a task for the judicial branch. Some items of expense may be clearly within this phrase, others may be arguably within the phrase, and some may be clearly outside the phrase. Again, a court faced with the question would be required to effectuate the intention of the voters in adopting the amendment.
As a general matter, it has been held that "[t]he term `cost' or `actual cost' is not a technical one having at all times the same meaning. It is a general or descriptive term which may have varying meanings according to the circumstances in which it is used." BostonMolasses Company v. Molasses Distributors Corporation, 274 Mass. 589;175 N.E. 150 (1931). It has been stated that "[t]he word `actual' is a word of limitation, as distinguished from all costs of conducting the business. State v. Tonopah Mining Company, 49 Nev. 428, 248 P. 835
(1926). In various contexts, the words "actual cost" or "actual costs" have been interpreted to prohibit deductions for profit and overhead.See Bailey v. Defenbaugh Company of Cleveland, Inc., 513 F.Supp. 232
(N.D. Miss 1981) (holding that a moneylender's profit on the sale of an insurance policy in connection with an automobile financing transaction was over and above "actual costs," of the insurance to the lender, stating that: "We believe that the Mississippi Legislature must have meant by `actual cost' the cost to the licensee, or it would have used a different phrase, such as `actual cost including a reasonable commission'"); and Mailander v. Continental State Bank ofBeckville, 11 S.W.2d 615 (Tex.App. 1928) (holding that the phrase "actual cost" excludes overhead, stating: "The use of the two words `actual cost' emphasizes the meaning of the parties, of excluding in the accounting between them any idea of profit, and everything except what fairly might be reckoned as a part of the real cost of directly effecting the alteration of the fixtures"). See also State v. TonapahMining Company, supra (holding that the term excludes taxes, depreciation, and insurance, and stating that: "The term `actual costs' as used in the statute has a well-known meaning among miners" and that "[t]he common sense of the thing is that it means the money actually expended in the extraction, transportation, and reduction of ores"); andAnaconda Copper Mining Co., v. Junod, State Treasurer, 71 Mont. 132,227 P. 1001 (1924) (holding that the phrase excludes deductions for taxes and insurance and stating that: "We are of the opinion that the words `actual cost' in both instances were used in a restricted sense; that is to say, in case of extracting ores from the mine, not all, but only the direct, costs and expenses were contemplated as deductible items").
The cases above stand for the proposition that the common meaning of the phrase "actual cost" is one of limitation or restriction. The phrase "actual cost of conducting the game or raffle" therefore itself provides a restriction on the expenses that may be deducted under the Amendment in order to arrive at the "net receipts" which must only be used for charitable, religious or philanthropic purposes. Again, the ultimate arbiter of the meaning of this phrase in Arkansas is the Arkansas Supreme Court.
Another restriction in the Amendment on the items that may be classified as an "actual cost of conducting the game or raffle" is found in Section 1(b)(2) of the Amendment, which will also be discussed more fully in response to your second question below. That subsection prohibits receipts of the game or raffle from being used to "compensate in any manner any person who works for or is in any way affiliated with the authorized bingo and raffles organization." Because such compensation is strictly prohibited by the Amendment, it may not, afortiori, be considered an "actual cost" of conducting the game or raffle.
The final portion of your first question mentions several specific items of expenditures and inquires as to whether the Amendment would prohibit their deduction as an "actual cost of conducting the game or raffle." You mention deductions of "such expenses as rent, bingo equipment, utilities, staffing, and maintenance or to contract for any of these services." As stated above, some items of expense may be clearly within this phrase, others may be arguably within the phrase and some may be clearly outside the phrase. The question as to particular expenses may involve issues of fact, and the General Assembly must adopt implementing legislation consistent with the Amendment to implement the law. See Proposed Amendment 1, § 1(c) (requiring the General Assembly to "provide by law for the licensure and regulation of authorized bingo and raffles organizations to conduct the game or [sic] bingo or raffles. . . ."). Again, however, the ultimate resolution of whether a particular expense represents an "actual cost" is a judicial question. To the extent you are asking for my opinion on how the Arkansas Supreme Court would rule on the question of "rent, bingo equipment, utilities, staffing, and maintenance or to contract for any of these services," it is my opinion that expenses for "bingo equipment," depending upon the facts, may be precisely the type of expense contemplated by the term "actual cost of conducting the game or raffle." "Rent" and "utilities" fall into a less clear category. Again, case law interpreting the phrase "actual costs" sometimes excludes expenses constituting "overhead." In my opinion expenses for "staffing" is more clearly prohibited because the Amendment requires the organization to "conduct" the game or raffle and the language of the Amendment prohibits any person who works for or is in any way affiliated with the organization from being compensated from the receipts.[3] That issue, and your question regarding deductions for expenses "to contract for any of these services" will be discussed more fully in response to your second question below, which involves contractual arrangements.
Question 2 — [W]hether Section 1(b)(2) would prohibit the use ofreceipts to pay for the types of expenses described above if incurred byan entity that is under contract to provide such services to theauthorized organization? For example, if an authorized organization hasa cleaning contract with a local janitorial service, does such contractmean that the janitorial service is "affiliated with" theorganization?
Your second question focuses on the Section 1(b)(2) prohibition against using any receipts from bingo and raffles to "compensate in any manner any person who works for or is in any way affiliated with the authorized bingo and raffles organization." You ask whether this restriction prohibits a contractor from being paid from the receipts to provide such services as "rent, bingo equipment, utilities, staffing, and maintenance" that you mentioned in your first question. In my opinion, as an initial matter, an issue more fundamental than the Section 1(b)(2) "affiliated with" restriction, although somewhat related to it, arises with regard to contractual services provided in connection with conducting the game of bingo or raffles.
The Amendment at issue was proposed as House Joint Resolution 1003 at the 2005 regular session of the General Assembly. The title of the House Joint Resolution provided in relevant part "For a Proposed Amendment to the Arkansas Constitution to Allow Bingo and Raffles to be Conducted byCharitable Organizations. . . ."[4] (Emphasis added). This title was used as the ballot title on the measure. See A.C.A. § 7-9-204 (Supp. 2005). The popular name of the Amendment, which the voters also viewed when casting their ballots, described the Amendment in part as "A Constitutional Amendment Providing that Bingo and Raffles, If Conductedby Authorized Organizations . . . Shall Not be Constitutionally Prohibited as a Lottery. . . ." (Emphasis added). See A.C.A. §7-9-110(a)(2) (Repl. 2000) (requiring the Attorney General to "fix and declare" the popular name by which each Amendment to the Arkansas Constitution shall be designated). The short text of the Amendment mentions the word "conduct," "conducted," or "conducting" no less than four times. See Section 1(a)(1) (defining an "authorized bingo and raffles organization" as including one that has been in existence for a period of not less than five years immediately prior to "conducting" the game of bingo or raffles); Section 1(b)(1) (providing that the game of bingo or raffles "conducted by" an authorized organization shall not be a lottery if all net receipts over the actual costs of "conducting" the game are used only for charitable purposes); and Section 1(c) (requiring the General Assembly to provide by law for the licensure and regulation of authorized organizations "to conduct" the games).
In my opinion it is clear that the language of the Amendment requires the authorized organization to "conduct" the activity. Again, the word "conduct" as used in the Amendment will be given its common meaning, with a view toward effectuating the intention of the people in passing the measure. This word is defined in Random House Webster's UnabridgedDictionary (2nd Ed. 2001) as meaning "direction or management; execution; the conduct of a business." (Emphasis original).See also State v. Mahfouz, 181 La. 23, 158 So. 609 (1935) ("The transitive verb `conduct,' says Webster, `stresses the idea of immediate supervision or personal leadership.' It means to lead, to have direction of, to manage, to direct, to carry on"); Wichita Film and Supply Companyv. Yale, 194 Mo. App. 60, 184 S.W. 119 (1916) ("to conduct is synonymous with `to manage,' `to direct,' `to carry on,' `to do business. . .");Reves v. Ernst Young, 507 U.S. 170 (1993) ("As a verb, `conduct' means to lead, run, manage, or direct . . . context is important, and in the context of the phrase `to conduct . . . [an] enterprise's affairs,` the word indicates some degree of direction"); and United States of Americav. Reeder, 614 F.2d 1179 (8th Cir. 1980) (for purposes of federal criminal gambling statute, 18 U.S.C. 1955, a person may be found to "conduct" a gambling business even though he is a mere servant or employee, having no part in the management or control of the business and no share in the profits). But cf. Ohio Roundtable v. Taft,119 Ohio Misc.2d 49,773 N.E.2d 1113 (2002) (Ohio's participation in multi-state lottery agreement did not mean that a state agency did not "conduct" the lottery, as required by law, stating that "[t]here can be no bright-line test as to when the Ohio Lottery Commission has delegated so much of its control over a lottery that it can no longer be regarded as `conducting' the lottery;" focusing on the purpose of the restriction, which was to avoid corruption and to prevent private enterprises from conducting the lottery).
In my opinion, therefore, to the extent your second question implies that some person or entity other than the authorized bingo or raffle organization would "conduct," execute, manage, or operate the game or raffle through a contractual arrangement supported by bingo or raffle receipts, it is my opinion that such action is not authorized by the Amendment. Again, the Arkansas Supreme Court will review the history of the times and circumstances existing at the time of the adoption of the Amendment in order to effectuate its intent. Article 19, § 14 of the Arkansas Constitution prohibits "lotteries," and under prior law, even bingo and raffles conducted by charitable organizations fell within this proscription. See e.g., Op. Att'y Gen. 2004-336; 2004-091, citingState v. Bass, 224 Ark. 976, 277 S.W.2d 479 (1955). The Amendment about which you inquire was therefore adopted to "Allow Bingo and Raffles to be Conducted by Charitable Organizations." See Title, HRJ 1003 (2005 Regular Session). Any interpretation that authorizes persons or entities other than charitable organizations to contract to operate or "conduct" the activity is therefore beyond the language, spirit and intention of the Amendment, in my opinion.[5]
That type of contractual arrangement may also run afoul of the "affiliated with" prohibition. Again, the Amendment prohibits bingo or raffle receipts from being used to "compensate in any manner any person who works for or is in any way affiliated with" the organization.See Section 1(b)(2). You focus on this proscription in your second question. It is clear, as an initial matter, by way of placing this prohibition in context, that the intention of the drafters of the Amendment was to authorize only the listed charitable organizations to conduct bingo games and raffles. Because these charitable organizations were the only intended operators of the games and raffles, the prohibition against persons being compensated in any manner from the receipts of the games was directed only against persons who "work for or are "in any way affiliated with" such organizations. The drafters likely did not feel compelled to include a prohibition against other persons being compensated from such receipts, because the Amendment does not contemplate that there would be any other such persons involved with conducting the activity. Your question is whether this "affiliated with" proscription prohibits a portion of the receipts from being paid to acontractor who has agreed with the organization to provide services such as "rent, bingo equipment, utilities, staffing, and maintenance." As stated above, if you refer to a contractual arrangement where the contractor could be deemed to conduct, operate, manage or execute the game or raffles, in my opinion such a contract is prohibited without reference to the "affiliated with" prohibition, although the latter prohibition certainly may provide an additional reason why such contracts are prohibited.
The words "in any way affiliated with" will be given their ordinary and common meaning, and will be construed so as to effectuate the intention of the voters. In my opinion these words were not used in a technical sense. As a consequence, your reference to the Black's LawDictionary definition of "affiliate" ("a condition of being united . . . or attached as member or branch"), is not appropriate. The common meaning of the words "affiliated" or "affiliated with" is to be "in close formal or informal association; related." Random House Webster'sUnabridged Dictionary (2nd Ed. 2001) at 33. See alsoHerman v. United Automobile, Aircraft Agricultural Implement Workersof America, 264 Wis. 562, 59 N.W.2d 475 (1953) ("The word `affiliated' is derived from the Latin word `affiliatus' and literally means a close association, such as that of a son to his father. When used with respect to organizations, the word means that two or more organizations are allied with or closely connected with one another, or with a central body"); Brinkman et al. v. Hovermale, Administrator, 106 Ind. App. 70,13 N.E.2d 885 (1938) ("The word affiliate `usually' means `to bring or receive into close connection, to ally"); and Smith v. Mark Dodge,Inc. 934 So.2d 375 (Ala. 2006) ("The adjective `affiliated' is defined as `closely associated with another typically in a dependent or subordinate position,'" citing Merriam-Webster's CollegiateDictionary 21 (11th ed.2003)). It has also been stated, however, that the phrase "affiliated with," especially when applied to the relationship between persons and organizations that conceal their connection, cannot be defined in absolute terms. Killian v. UnitedStates, 368 U.S. 231, 258 (1961).
Although the meaning of the term "affiliated with" may be incapable of precise definition absent its application to concrete facts, it will undoubtedly be interpreted to effectuate the voters' intentions as to who may receive compensation from the receipts of the bingo games and raffles. In addition, I will note that the language of the prohibition restricts the receipt of compensation to any person "in any way
affiliated with" the organization. (Emphasis added). In my opinion, the phrase "in any way" has the effect of expanding the phrase "affiliated with" to its broadest reasonable meaning. See, e.g., Uptown Food Store,Inc. v. Ginsberg, 255 Iowa 462, 123 N.W.2d 59 (1963) (agreement "not to `in any way compete with the business of the Lessee' . . . includes all or every manner or mode of competing," stating that "[t]he word `any' has the force and effect of `all' or `every' and refers to "such other competing as human ingenuity might devise.")
In my opinion, therefore, contractors who agree with charitable organizations to provide a comprehensive or broad range of services necessary to bring about the operation of bingo games or raffles would almost invariably be deemed to be both "conducting" the games and to be "affiliated with" the organization for purposes of the Amendment.
To the extent your second question inquires about contracts narrower in scope, which involve services that might be found to be unconnected to the actual operation or conduct of the games or raffles (for example the "janitorial services" you mention), in my opinion the issue of whether such persons are "in any way affiliated with" the organization will be one of fact, based upon the circumstances of the contracts at issue, and in light of the intention of the people in adopting the Amendment. As discussed earlier in this opinion, serious preliminary questions may arise as to whether contractual expenses for items such as "janitorial services" may even be properly paid from bingo or raffle receipts as "actual costs" prior to the "net receipts" being dedicated solely for charitable, religious or philanthropic purposes. The General Assembly, and any regulatory entity invested with rule-making authority will have some authority to delineate the permissible scope of such narrower contractual arrangements. Neither the General Assembly, nor any regulatory body, however, may transgress the language of the Arkansas Constitution in this regard.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL
Attorney General
[1] This amendment will presumably be incorporated into the Arkansas Constitution as Amendment 84. It was proposed by HJR 1003 of the 2005 regular legislative session.
[2] You have apparently quoted this section from the Secretary of State's publication of the measure, which contains at least one typographical error. I have quoted above from HJR 1003 of the 2005 regular session, as reprinted in the supplement to the Constitution volume of the Arkansas Code, neither of which contains the same error.
[3] I am not certain what is meant by the remaining term "maintenance."
[4] The title of such a resolution, because it serves as the ballot title for the measure, can apparently be referred to in order to cast light on the interpretation of the amendment, if ambiguous. McDonald v.Bowen, 250 Ark. 1049, 468 S.W.2d 765 (1971) (because rules of statutory construction also apply to the interpretation of constitutional amendments, in cases of ambiguity, it is proper to refer to the title of such an amendment as an aid to its interpretation) and Miller v.Leathers, 311 Ark. 372, 843 S.W.2d 850 (1992) (ballot title of constitutional amendment is not a part of the measure and thus in no ways controls the meaning of the amendment unless amendment itself isambiguous).
[5] Questions may nonetheless arise as to exactly which representatives of the authorized organizations may take part in conducting the games and raffles. For example, must the games be conducted only by the officers, directors, employees or members of the organizations, or can volunteers and guests of the organization also take part in the conducting of the game or raffle? Presumably this is a matter that may be addressed by legislation or rule. One case where a similar issue was discussed is Freedom Road Foundation v. OhioDepartment of Liquor Control, 80 Ohio St. 3d 202, 685 N.E.2d 522 (1997) (where 100% of the proceeds were donated to charity, and charitable organization did not pay any person to assist in activity, a badly divided Ohio Supreme Court held that charitable gambling statute permitted participation of liquor-permit premises owners and employees in charitable "tip ticket" operation, so long as neither owners nor employees were compensated for their participation).